UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PATRICK DOUGHTY and RANDY SEVERANCE,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, SEIU LOCAL 1984, CTW, CLC,<br><br>　　　　　Defendant. | No. 1:19-cv-53-PB |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

This is one of several dozen lawsuits filed across the country since the Supreme Court's decision last June in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), in which plaintiffs seek to recover "fair share" fees they paid to the union that represented them in collective bargaining in accordance with the requirements of state law. In *Janus*, the Supreme Court overruled its 40-year-old precedent in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), in which the Court had held that public employees who declined to become dues-paying union members could, consistent with the First Amendment, be required as a condition of employment to contribute their proportionate share of the union's costs of collective bargaining and contract administration. Overturning that precedent, *Janus* held for the first time that such fair share requirements are unconstitutional in the public sector.

There is no dispute that, after the *Janus* decision, such fair-share fees are no longer lawful and that the state laws and contractual provisions that authorized them are unenforceable. The Complaint makes no allegation that Plaintiffs have been required to pay any such fees after the *Janus* decision was announced on June 27, 2018. Rather, what Plaintiffs seek in this lawsuit is to recover fees that they were required to pay *prior to* that date – at a time when the assessment and collection of fair-share fees was expressly authorized by New Hampshire law and had been repeatedly upheld by the Supreme Court. As explained below, there is no merit to this claim for repayment of fees that were lawfully collected and expended for the benefit of all members of the bargaining unit the union represented, including nonunion members like Plaintiffs Doughty and Severance. Rather, the good-faith defense that is available to nongovernmental actors sued under 42 U.S.C. § 1983 shields such private-party defendants from liability for following the law

as it existed at the time. Plaintiffs' claim for repayment of such fees must accordingly be dismissed for failure to state a claim under Rule 12(b)(6).

## BACKGROUND

**1.** The New Hampshire Public Employee Labor Relations statute, N.H. RSA § 273-A, like the law of many other states, allows for public employees to organize and bargain collectively with their public employer, through a representative organization of their choosing, over the terms and conditions of their employment. A unit of state employees that includes Plaintiffs Doughty and Severance chose Defendant State Employees Association of New Hampshire, SEIU Local 1984 ("SEA-NH") to represent them, and SEA-NH was certified as their collective bargaining representative. *See* Compl. (Dkt. 1), ¶¶ 11-13. As the certified representative, SEA-NH had a duty to represent equally the interests of all public employees in the bargaining unit, in collective bargaining and grievance administration, whether they were union members or not. *See Nashua Teachers Union v. Nashua Sch. Dist.*, 142 N.H. 683, 688 (1998).

Recognizing that complying with this "duty of fair representation" with respect to non-dues-paying members of the bargaining unit was not cost-free, the State legislature further authorized unions and public employers to negotiate, as part of their collective bargaining agreements, a "fair-share" clause under which employees in the bargaining unit who did not join the union could be required to pay a fee to the union "to defray the costs associated with exclusive representation and collective bargaining." *Id.* at 685, 686. The Supreme Court in its 1977 *Abood* decision explicitly upheld the constitutionality of such fair-share requirements in the public sector, as long as the nonmember's required payment was (as here) limited to the portion of union dues that went for negotiating and enforcing the collective bargaining agreement, to the exclusion of any political or ideological expenditures. *See Abood*, 431 U.S. at 223-37.

Consistent with this statutory authorization, the collective bargaining agreements negotiated between SEA-NH and the State included a provision that members of the bargaining unit who declined to join SEA-NH as dues-paying members would be required to pay a fair-share fee to help defray the union's costs of collective bargaining and contract enforcement that benefited union members and nonmembers alike. Compl. ¶ 14

**2.** In *Janus*, the Supreme Court, by a 5-4 vote, overruled its 1977 *Abood* precedent and held that public employees could not constitutionally be required to pay fair-share fees. In so doing, however, the Court observed that the district court, affirmed by the Seventh Circuit, had been correct to rule otherwise and dismiss the plaintiff's complaint because "the claim it asserted was foreclosed by *Abood*." 138 S. Ct. at 2462. Approximately seven months later, Plaintiffs brought the instant action. They do not allege that they have been required to pay fair-share fees to SEA-NH after the *Janus* decision and they seek no injunctive relief. Rather, their claim appears to be that the fair-share fees they paid prior to the *Janus* decision on June 27, 2018 – when state law authorizing fair-share fees and the *Abood* decision upholding the constitutionality of fair-share fee provisions were the law of the land – were nonetheless unlawfully "seized" and must be paid back. Compl. ¶ 4.[1]

---

[1] Although the factual allegations in Plaintiffs' Complaint are phrased entirely in the past-tense and thus appear to be directed solely to repayment of fees paid prior to the *Janus* decision, *see* Compl. ¶¶ 12-15, it could be read as ambiguous inasmuch as it contains no language specifically acknowledging that Defendant's collection of fair-share fees ceased following *Janus* or explicitly stating that Plaintiffs' claim is only for the repayment of fees collected prior to that decision. In an abundance of caution, therefore, SEA-NH conditionally submits the accompanying Declaration of Gary Snyder, which attests that the union ceased collecting fair-share fees immediately following the *Janus* decision and has received no such fees from Plaintiffs or anyone else since that time. The Court need take no notice of this Declaration unless Plaintiffs in response should contend that their Complaint is seeking repayment of post-*Janus* fees; in that case SEA-NH respectfully requests the Court consider the Declaration and treat this motion, in that limited respect, as one for summary judgment pursuant to Rule 12(d).

3

# ARGUMENT

I.  **Plaintiffs' Claim that *Janus* Requires Repayment of Fees Received While *Abood* Remained Good Law is Precluded by the Good-Faith Defense to § 1983 Liability**

The issue in this case is whether SEA-NH is required to repay fair-share fees that were collected from Plaintiffs prior to the Supreme Court's *Janus* decision overruling its earlier decision in *Abood* that had expressly authorized collection of such fees.[2] Five district courts have addressed this precise question and in every instance, the court has found that the good-faith defense to Section 1983 liability disposed of the case as a matter of law.

In *Danielson v. AFSCME Council 28*, 340 F. Supp. 3d 1083 (W.D. Wash. 2018), the court addressed a Section 1983 claim identical to the one brought in this case for repayment of fair-share fees collected by a union prior to the *Janus* decision. The district court granted summary judgment in favor of the defendant union finding:

> In sum, the good faith defense applies, and when applied here, there is no issue of material … fact as to any facts that collectively justify shielding the Union Defendant from monetary liability for pre-*Janus* agency fees collected from Plaintiffs…. The Union Defendant's actions were authorized by the law and the State of Washington, and the actions of the State were apparently lawful. The Union Defendant acted in good faith.

*Id.* at 1087. Similarly, in *Cook v. Brown*, No. 6:18-cv-01085-AA, 2019 WL 982384 (D. Oreg. Feb. 28, 2019), the district court again rejected an identical Section 1983 claim for repayment of fair-share fees paid prior to *Janus* on the basis of the good-faith defense. Granting summary judgment to the union, the court stated:

> I find that [the union] is entitled to a good faith defense against claims of monetary liability….Here, AFSCME collected agency fees in accordance with Oregon's laws and then-controlling Supreme Court precedent that upheld their

---

[2] The statute of limitations for actions brought under 42 U.S.C. § 1983 in New Hampshire is three years. *See Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010).  Accordingly, the damages to which Plaintiffs would be entitled should they prevail would be measured by the amount of fair-share fees they paid since January 2016, three years before the Complaint was filed.

4

> constitutionality. It would be highly inequitable to hold private parties retroactively liable for § 1983 damages in such a circumstance.

*Id.* at *7. The court reached the same result in *Carey v. Inslee*, No. 3:18-cv-05208-RBL, 2019 WL 1115259 (W.D. Wash. Mar. 11, 2019), where the court once again rejected a Section 1983 claim for repayment of pre-*Janus* fair-share fees because such fees were collected in accordance with then-valid state law and binding Supreme Court precedent: "[The union] collected agency fees from nonunion members because it correctly believed that doing so was lawful at the time. It therefore may assert the good faith defense." *Id.* at *6. Similarly, in *Crockett v. NEA-Alaska, et al.*, No. 3:18-cv-00179-JWS, 2019 WL 1212082 (D. Alaska Mar. 14, 2019), the court granted the unions' Rule 12(b)(6) motion and dismissed the plaintiffs' Section 1983 claim for repayment of pre-*Janus* fair-share fees because the "Union Defendants collected fair-share fees in accordance with PERA and in accordance with then-binding Supreme Court precedent that upheld the constitutionality of such fees." *Id.* at *5. And finally, in *Janus* itself – on remand from the Supreme Court – the district court rejected Mr. Janus' claim for damages under 42 U.S.C. § 1983 for the fair-share fees collected prior to the Supreme Court's decision because "Defendants' actions were in accord with a constitutionally valid state statute," and thus "the good faith defense applies." *Janus v. AFSCME Council 31*, No. 15 C 1235 (N.D. Ill. Mar. 18, 2019), slip op. at 6 (attached).

This series of decisions follows a similarly unbroken line of cases that considered precisely the same question in the wake of the Supreme Court's decision in *Harris v. Quinn*, 134 S. Ct. 2618 (2014), in which the Court held that "quasi-public" home-care and child-care workers could not be required to pay fair-share fees. *See Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016); *Winner v. Rauner*, No. 15 CV 7213, 2016 WL 7374258, at *5-6 (N.D. Ill. Dec. 20, 2016); *Hoffman v. Inslee*, No. C14-200-MJP, 2016 WL 6126016 (W.D. Wash. Oct. 20,

5

2016). In these cases, as in all of the post-*Janus* cases discussed above, the courts squarely rejected the plaintiffs' claims for repayment of fair-share fees that had been lawfully collected prior to a Supreme Court decision declaring such laws unconstitutional. That result is firmly grounded in the law and is fully applicable here.

### A. The Courts Have Uniformly Recognized the Availability of a Good-Faith Defense to Private Parties Sued under § 1983

The widespread adoption of the good-faith defense to § 1983 damages actions grew out of two leading Supreme Court decisions addressing the scope of liability for nongovernmental actors under that statute – *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), and *Wyatt v. Cole*, 504 U.S. 158 (1992). When the Supreme Court initially determined in *Lugar* that private actors could, under certain circumstances, be held liable along with their governmental counterparts for violations of § 1983, and when it subsequently held in *Wyatt* that such private defendants could not invoke the doctrine of qualified immunity available to their governmental co-defendants in § 1983 damages actions, the Court recognized that "principles of equality and fairness may suggest … that private citizens … should have some protection from liability, as do their government counterparts," when the private actions held to be unconstitutional had been undertaken pursuant to presumptively valid existing law. *Wyatt*, 504 U.S. at 168. Thus, although not called upon to decide the question in the cases before it, the Court suggested in both *Lugar* and *Wyatt* – in dicta in the majority opinion and in separate opinions joined by five members of the Court – the availability of a good-faith defense for nongovernmental defendants sued under § 1983. *Id.* at 168-69 (opinion of the Court); *id.* at 169 (Kennedy, J., joined by Scalia, J., concurring); *id.* at 175 (Rehnquist, C.J., joined by Souter and Thomas, JJ., dissenting); *see also Lugar*, 457 U.S. at 942 n.23. The Court subsequently reiterated this position in *Richardson v. McKnight*, 521 U.S. 399, 413-14 (1997).

That view, accepted by all members of the *Wyatt* Court, has subsequently been adopted by every lower court that has ever considered the issue. Thus, on remand from the Supreme Court in *Wyatt*, the Fifth Circuit squarely addressed and decided the question, which it found "largely answered by the[] separate opinions" of Justice Kennedy and Chief Justice Rehnquist. The court held "that private defendants sued on the basis of *Lugar* may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, that is, if they either knew or should have known that the statute upon which they relied was unconstitutional." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

In the quarter-century since that decision, four other courts of appeals have considered the issue, and all have reached the same result. *See Pinsky v. Duncan*, 79 F.3d 306, 311-12 (2d Cir. 1996); *Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275-78 (3d Cir. 1994); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698-99 (6th Cir. 1996); *Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008).

And that is for good reason. Even though nonbinding, the Supreme Court's discussion of the issue in *Wyatt*, *Lugar*, and *Richardson* makes clear the compelling rationale for the good-faith defense, which has been succinctly summarized by one court as follows:

> It would be manifestly unfair to hold that the state actor – whose participation is required for there to be a section 1983 violation at all – is entitled to qualified immunity, but hold the private actor, who did not subjectively believe that he was acting unconstitutionally, liable for the plaintiff's damages.

*Franklin v. Fox*, No. C 97-2443, 2001 WL 114438, at *5 (N.D. Cal. Jan. 22, 2001) (Ch. Breyer, J.). Thus, "the Justices who speak of this good faith defense, as well as the circuits that have applied it, were, and are, concerned with the unfairness of imposing damages liability on private defendants whose honest and reasonable belief in the constitutionality of their conduct turns out

7

later to have been mistaken." Sheldon Nahmod, *The Emerging Section 1983 Private Party Defense*, 26 Cardozo L. Rev. 81, 91 (2004).

It is, in sum, well settled that nongovernmental actors sued under § 1983 – while not immune from suit entirely as are government officials under the doctrine of qualified immunity – are entitled to invoke a good-faith defense to claims for damages.

### B. The Union's Reliance on Presumptively Valid State Law and Controlling Supreme Court Precedent in Receiving Fair-Share Fees Prior to *Janus* Was Objectively Reasonable and Thus in Good Faith

The good-faith defense precludes Plaintiffs' demand for damages in the form of repayment of fair-share fees paid prior to June 27, 2018, when the Supreme Court announced its decision in *Janus*. There is no dispute that those fees were assessed and received under state law authorizing their assessment. *See Nashua Teachers Union*, 142 N.H. at 686 ("agency fees are statutorily authorized as a proper subject of negotiation under RSA 273-A:3, I (1987)"). That statute was, as a matter of law, entitled to a presumption of validity. As the Second Circuit has put it, "it is objectively reasonable to act on the basis of a statute not yet held invalid." *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996). The court cited in this connection the venerable holding of *Birdsall v. Smith*, 122 N.W. 626, 627 (Mich. 1909), that under the common law "[e]very statute should be considered valid until there is a judicial determination to the contrary." *Pinsky*, 79 F.3d at 313. Similarly, Justice Kennedy relied on *Birdsall* in his *Wyatt* opinion for the proposition that "a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable *as a matter of law*." 504 U.S. at 174 (Kennedy, J., concurring) (emphasis added). As the *Carey* court noted, "the roots of the good faith defense suggest that good faith may be decided as a matter of law when the defendant relied upon a valid statute." *Carey*, No. 2019 WL 1115259, at *7.

In this case, moreover, there is far more than the presumption of statutory validity. There is, in the *Abood* decision, a controlling Supreme Court precedent dating back over 40 years that explicitly held fair-share provisions to be constitutional under the First Amendment – a precedent that the Court followed and re-affirmed many times. *See*, *e.g.*, *Ellis v. Bhd. of Ry. Clerks*, 466 U.S. 435 (1984); *Chicago Teachers Union v. Hudson*, 475 U.S. 292 (1986); *Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507 (1991); *Locke v. Karass*, 555 U.S. 207 (2009).

Because the presumption of validity of state law is sufficient "to allow a defendant to argue that he acted in subjective good faith," *Wyatt*, 504 U.S. at 174 (Kennedy, J., concurring), the union's reliance on New Hampshire's statutory authorization of fair-share fees, and on controlling Supreme Court precedent upholding such authorization "prior to [the *Janus*] determination of unconstitutionality," was reasonable and constituted good-faith reliance "as a matter of law." *See id.*; *see also Danielson*, 340 F. Supp. 3d at 1086 ("The good faith defense should apply here as a matter of law."); *Winner*, 2016 WL 7374258, at *5-6 (granting judgment on the pleadings); *Jarvis*, 660 F. App'x at 75-76 (affirming judgment of dismissal).

In light of the presumption of statutory validity, it is simply irrelevant whether, as plaintiffs have argued in similar cases pending in other jurisdictions, it supposedly became foreseeable in the wake of dicta in *Knox v. SEIU*, 567 U.S. 298 (2012) and *Harris v. Quinn*, 134 S. Ct. 2618 (2014), that *Abood* might be reconsidered. "Questioning the continuing viability of a precedent is a far cry from implicitly overruling it," *United States v. Burwell*, 690 F.3d 500, 510 (D.C. Cir. 2012) (en banc), and *Abood* was not, in fact, overruled in *Knox.* Neither was it overruled in *Harris v. Quinn*. On the contrary, the Court specifically *declined* to overrule *Abood*, 134 S. Ct. at 2638 n.19, even though that was the principal question briefed and argued by the parties, *see id.* at 2645 (Kagan, J., dissenting). Nor was *Abood* overruled in *Friedrichs v.*

9

*California Teachers Ass'n*, 136 S. Ct. 1083 (2016), notwithstanding that the Court granted certiorari specifically to consider "[w]hether *Abood* … should be overruled and public-sector 'agency shop' arrangements invalidated under the First Amendment." Petition for Writ of Certiorari, *Friedrichs v. California Teachers Ass'n,* No. 14-915, 2015 WL 393856 (U.S. Jan. 26, 2015), at *i.

Thus, even to the extent that, since *Knox*, "public-sector unions have been on notice … regarding [the Supreme] Court's misgivings about *Abood*," *Janus*, 138 S. Ct. at 2484, the dispositive fact is that at all times prior to June 27, 2018 it was *Abood* that was the law of the land, and not any nonbinding commentary on *Abood*. *See Cook*, 2019 WL 982384, at * 7 ("reading the tea leaves of Supreme Court dicta has never been a precondition to good faith reliance on governing law").[3] That is clear from *Janus* itself, for the Supreme Court there emphasized that the union had acted properly in seeking dismissal of the plaintiff's complaint by "correctly recognizing that the claim it asserted was foreclosed by *Abood*." *Janus*, 138 S. Ct. at 2462.

Private parties should be able, and indeed are expected, to continue to act in accordance with the existing law of the land unless and until that law is invalidated. As the district court in *Carey* explained in rejecting a post-*Janus* Section 1983 claim for repayment of fair-share fees under the good-faith doctrine:

---

[3] It bears emphasis that what the Supreme Court said in *Janus* about its previously expressed "misgivings" about the status of the *Abood* precedent was in the context of the Court's discussion of reliance interests for purposes of its *stare decisis* analysis. In that context, the Court referred to what should have been understood by any union negotiating a collective bargaining agreement containing an agency fee provision. *See* 138 S. Ct. at 2484-85. But it is an enormous leap from the Court's point about what a union in that situation should have assumed about the future development of the law to the contention that unions were not, at that time, entitled to rely on the law as it then existed in receiving, and expending for the benefit represented employees, fair-share fees authorized by state law.

10

> [T]his case does not involve a novel application of a broad constitutional holding; instead, it involves the exact type of conduct that the Court had sanctioned in a previous case. It therefore does not matter how many 'warnings' the Court may have given about its intention to overrule *Abood*. Until it actually did so, *Abood* was the law of the land and [the union's] conscious compliance with that ruling can establish its good faith as a matter of law.

*Carey*, 2019 WL 1115259, at *8. Indeed, "[t]he Supreme Court itself has admonished lower courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court itself 'the prerogative of overruling its own decisions.'" *United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989)); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) (lower courts "should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 780 (7th Cir. 2015) ("[T]he Court has not told us that [a precedent] has been overruled, and only it has the prerogative of overruling its own decisions."). Private parties should not be held to a higher standard of prescience than the federal courts.[4]

Moreover, as the court found in *Cook*, "[p]recluding a good faith defense based on subjective predictions of when the Supreme Court would overrule precedent would also imperil the rule of law." *Cook*, 2019 WL 982384, at *7; *see also Carey*, 2019 WL 1115259, at *8. ("Plaintiffs' approach would have the practical effect of destabilizing the very role of the judiciary."); *Crockett*, 2019 WL 1212082, at *6 ("Barring the use of the good-faith defense on a

---

[4] By way of analogy, it may be noted in this regard that the standard for applying the doctrine of qualified immunity – whether the unconstitutionality of the defendant public official's actions was "clearly established" at the time of the act in question, *e.g.*, *Abbott v. Sangamon County*, 705 F.3d 706, 725 (7th Cir. 2013) – does not turn on the defendant's ability to forecast what the courts might hold in the future.

11

private defendant who relied on Supreme Court precedent to justify its conduct based on the likelihood of the Supreme Court overruling that precedent would indeed imperil the rule of law.") (internal quotation marks omitted). Unable to leave to the Supreme Court the prerogative of overruling its own precedents, private citizens would be compelled to order their affairs not according to the law as it exists but rather based on their best guesses about what the Supreme Court might decide next. The leavening effect of the good-faith defense thus not only shields private parties from liability incurred by their reliance on existing law, but protects the rule of law itself.

### C. Applying the Good-Faith Defense Here Is Fully Consistent with the Supreme Court's Retroactivity Jurisprudence

The premise of Plaintiffs' lawsuit appears to be that *Janus* retroactively transformed what at the time were fully lawful acts into unconstitutional actions giving rise to substantial liability for damages. In fact, however, the Supreme Court's jurisprudence in this area makes clear that the "retroactive" application of a newly enunciated constitutional rule does not necessarily determine the outcome of the case or, more specifically, the relief to which the plaintiff is entitled. Rather, retroactivity is a question of "whether the court should apply the old rule or the new one" and thus is "a matter of choice of law." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 534-35 (1991) (plurality op.). As the Court explained, a holding that a new rule "should apply retroactively to claims arising on facts antedating that decision," *id.* at 532, did not "deprive[] respondents of their opportunity to…demonstrate reliance interests entitled to consideration in determining the nature of the remedy that must be provided." *Id.* at 544. Specifically, there will be circumstances where the "retroactive" application of a "new rule, for well-established legal reasons, does not determine the outcome of the case," such as when there

is "a previously existing, independent legal basis (having nothing to do with retroactivity) for denying relief." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995).

That is precisely the situation here. As shown above, the good-faith defense precludes Plaintiffs' Section 1983 claim for repayment pre-*Janus* fees. This is exactly the type of previously existing, independent legal basis for denying relief contemplated by the Supreme Court's retroactivity analysis. *See Cook*, 2019 WL 982384, at * 8 ("Since extending the good faith defense only concerns the appropriate remedy for Plaintiffs, it is consistent with the retroactivity doctrine.").[5]

## II.     Plaintiffs' Request for Declaratory Relief Also Fails as a Matter of Law

The primary remedy Plaintiffs seek is repayment of fair-share fees collected prior to the *Janus* decision. In their Prayer for Relief, however, Plaintiffs also include a request for declaratory relief. *See* Compl., Prayer for Relief ¶ B. Plaintiffs ask this Court to declare that the fair-share fee provisions in the relevant collective bargaining agreements and SEA-NH's receipt and use of such fees was unconstitutional. This request for declaratory relief is clearly moot with respect to any present activity as there is no dispute that the fair-share fee provisions of the relevant collective bargaining agreement are unenforceable after *Janus*. And the courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). *See also ACLU of Mass. v. United States Conf. of Catholic Bishops*, 705 F.3d 44, 53 (1st Cir. 2013) ("With limited

---

[5] In *Janus*, the Court did not address remedial issues but merely remanded for the lower courts to do so. *See* 138 S. Ct. at 2486. In *Beam*, the Court left open the possibility of "the purely prospective method of overruling," 501 U.S. at 536, in which the new rule is applied neither to the parties before the Court nor to others. Given the clearly applicable good-faith defense resolves the issue of liability that is before this Court, it is unnecessary to consider the more difficult issue of whether the *Janus* decision "applies" retrospectively to events that took place before June 27, 2018.

exceptions, not present here, issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory."); *James Luterbach Constr. Co. v. Adamkus*, 781 F.2d 599, 602 (7th Cir. 1986) (denying declaratory judgment with respect to past actions where plaintiff's claim was otherwise moot). Accordingly, Plaintiff's request for declaratory relief should be denied.

## CONCLUSION

The good-faith defense disposes of Plaintiffs' Section 1983 claim as a matter of law. The Complaint should therefore be dismissed for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

Dated: March 18, 2019

/s/ Ramya Ravindran

Gary Snyder (NH Bar No. 265339)
General Counsel
State Employees Association of
New Hampshire, SEIU Local 1984
207 North Main Street
Concord, NH 03301
(603) 271-3411
gsnyder@seiu1984.org

Leon Dayan*
Ramya Ravindran*
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street N.W., Suite 1000
Washington, DC 20005
(202) 842-2600
ldayan@bredhoff.com
rravindran@bredhoff.com

John S. Krupski (NH Bar No. 11309)
MILNER & KRUPSKI, PLLC
109 North State Street, Suite 9
Concord, NH 03301
(603) 410-6011
jake@milnerkrupski.com

*Counsel for Defendant*

* Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Ramya Ravindran, an attorney, hereby certify that on March 18, 2019, I caused the foregoing **Memorandum of Law in Support of Defendant's Motion to Dismiss** to be filed electronically with the Court.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Ramya Ravindran
Ramya Ravindran