UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **PATRICK DOUGHTY**, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> **STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, SEIU, LOCAL 1984, CTW, CLC,** <br><br> Defendant. | Case No. 1:19-cv-00053-PB |

## PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION TO DISMISS

### Oral Argument Requested[1]

Patrick Doughty and Randy Severance ("Plaintiffs") through their counsel, submit this Objection to State Employees' Association of New Hampshire, Inc., SEIU, Local 1984, CTW, CLC's ("Union") Motion to Dismiss and accompanying Memorandum of Law.

### FACTS

Plaintiffs are employees of the State of New Hampshire ("State") and are members of a bargaining unit exclusively represented by the Union. Complaint (1/14/2019) ("Doc. 1"[2]) ¶¶ 1, 12-13. Before the Supreme Court's *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018) decision, Plaintiffs were compelled to pay a fee to the Union as a condition of employment by the

---

[1] In accordance with Local Rule 7.1(d), Plaintiffs request this Court conduct oral argument because this case involves novel issues of first impression in the First Circuit. Plaintiffs have not found either a First Circuit or any district court decision within the First Circuit that has ruled on whether private parties enjoy a good faith defense for Section 1983 First Amendment claims. Moreover, Plaintiffs' lead counsel have extensive experience in this area of the law and can aid this Court in further developing the arguments presented in their complaint and this objection to Defendants' motion to dismiss.

[2] Citations to "Doc." numbers in this objection refer to the ECF docketing number assigned to each document in this case.

1

operative state statute and collective bargaining agreements between the Union and the State. Doc. 1 at ¶14.[3] The State deducted these compulsory fees from Plaintiffs' wages and remitted them to the Union. *Id.* ¶ 1. Plaintiffs allege that this exaction and retention of agency fees deprived them, and a similarly situated class of individuals, of their First Amendment rights in violation of 42 U.S.C. § 1983. *Id.* ¶ 24.

The Union does not appear to dispute the factual assertions in the complaint. *See* Union's Memorandum of Law (3/18/2019) ("Doc. 13-1").

## ARGUMENT

**I. Plaintiffs State a Claim for Relief Under *Janus v. AFSCME*.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007) (internal citations omitted)). The court "must accept all well-pleaded facts as true and construe all reasonable allegations in the light most favorable to the plaintiff." *Drolet v. Healthsource, Inc.*, 968 F.Supp. 757, 759 (D.N.H. 1997). To that end, a motion to dismiss for failure to state a claim "should be granted only if the complaint fails to state a claim for relief under any plausible theory." *Id.*

Under the Supreme Court's decision in *Janus*, only two material facts are necessary to show that a union deprived an individual of his or her First Amendment rights. Namely, that the individual: (1) was a public employee; and (2) was compelled as a condition of employment to

---

[3] The Union alleges that Plaintiffs' Complaint does not explicitly state whether dues deductions continued or ceased after the *Janus* decision. Doc. 13-1 at 3 n.1. Plaintiffs do not allege that fees continue to be deducted out of their wages after *Janus* was decided.

2

make payments to a union, which the union retained. 138 S. Ct. at 2486. As described above, before *Janus*, Doughty, Severance, and the members of the proposed class were public employees from whom the Union compelled fee payments as a condition of employment and has retained those fee payments. These facts are alleged in the Plaintiffs' complaint (Doc. 1 at ¶¶ 12-15), and the Union does not dispute these facts in its Motion to Dismiss or accompanying Memorandum of Law. Accordingly, construing these allegations in the light most favorable to the plaintiff and accepting those facts as true, the Court must conclude that the complaint states a claim for relief under the recent *Janus* decision.

Given these undisputed facts, Plaintiffs, and the proposed class are entitled to compensatory damages equal to all agency fees seized from them and the proposed class since the beginning of the statute of limitations period, plus interest. *See Railway Clerks v. Allen*, 373 U.S. 113, 122 (1963). "Compensatory damages, designed to make the victim of unconstitutional behavior whole, are a permissible basis of recovery" in Section 1983 actions. *U.S. ex rel. Chandler v. Cook Cty., Ill.*, 277 F.3d 969, 977 (7th Cir. 2002), *aff'd*, 538 U.S. 119 (2003). Alternatively, if this Court does not award Plaintiffs compensatory damages, they, and the proposed class, it should award Plaintiffs nominal damages of $1. *See Cortes-Reyes v. Salas-Quintana*, 608 F.3d 41, 53 n.15 (1st Cir. 2010) (noting the procedure for seeking nominal damages for a Section 1983 claim).

**II. A Good Faith Defense is Unavailable to the Union, and Even if It Was, that Defense Should not be Applied in This Case**

**A. The "good faith" defense is not available for the Union's First Amendment violations.**

The Union argues that unions in general are entitled to a good faith defense from damages relating to the compulsory fees they seized and retained from non-members in violation of the First Amendment. Doc. 13-1 at 4-8. This argument fails for three reasons. First, Section 1983's text does not provide a good faith defense for First Amendment claims. Second, the relevant case law

does not provide a good faith defense for First Amendment claims. Finally, the principles behind the good faith defense are not appropriate in the First Amendment context.

### 1. Section 1983's text does not provide a good faith defense.

The starting point for any analysis must be Section 1983's text, which does not include a good faith defense:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The Supreme Court has departed from the statute's text and incorporated certain immunites from assumed common law background principles, but courts should not lightly infer immunites and defenses to the statute because "[i]ts language is absolute and unqualified; no mention is made of any privileges, immunities, or defenses that may be asserted." *Owen v. City of Indep.*, 445 U.S. 622, 635 (1980). Yet that is what the Defendant is asking this Court to do: depart from the text of the statute and infer a good faith defense for its First Amendment violations.

### 2. Neither the Supreme Court nor the First Circuit has held a good faith defense is available under Section 1983.

Neither the Supreme Court nor the First Circuit found a good faith defense to First Amendment claims brought under Section 1983 or a good faith defense for Section 1983 claims in general. The Union admits as much. Doc. 13-1 at 6-7. The Court in *Wyatt v. Cole*, 504 U.S. 158 (1992) and *Richardson v. McKnight*, 521 U.S. 399 (1997) expressly did *not* decide whether the litigants in those cases might be able to raise a good faith defense to allegations of constitutional deprivations under Section 1983. In *Richardson*, the Court explained "*Wyatt* explicitly stated that it did not decide whether or not the private defendants before it might assert, not immunity, but a special 'good-faith' defense." 521 U.S. at 413. The *Richardson* Court held that "[l]ike the Court

4

in *Wyatt*, and the Court of Appeals in this case, *we do not express a view* on this last-mentioned question." *Id.* at 414 (emphasis added).[4] *Wyatt* itself stated: "Because those issues are not fairly before us, however, we leave them for another day." 504 U.S. at 169.

The First Circuit has never found that the good faith defense applies to private actors who have violated the Constitution under color of state law in the First Amendment or any other context—contrary to the Union's statement that courts have "uniformly" recognized a good faith defense for claims arising under Section 1983. Doc. 13-1 at 6.

In 1992, the Supreme Court in *Wyatt* held that private parties rarely enjoy a good faith immunity to Section 1983 liability. 504 U.S. at 161, 168. *Wyatt* involved "private defendants charged with 42 U.S.C. § 1983 liability for invoking state replevin, garnishment, and attachment statutes later declared unconstitutional" for violating due process guarantees. *Id.* at 159. The claim was analogous to "malicious prosecution and abuse of process," and at common law, "private defendants could defeat a malicious prosecution or abuse of process action if they acted without malice and with probable cause." *Id.* at 164–65.

But the Supreme Court found that "[e]ven if there were sufficient common law support to conclude that respondents . . . should be entitled to a good faith *defense*, that would still not entitle them to what they sought and obtained in the courts below: the qualified *immunity* from suit accorded government officials . . . ." *Id.* at 165 (first emphasis added). The reason was, the "rationales mandating qualified immunity for public officials are not applicable to private parties." *Id.* at 167. The Court determined that the private defendants did not have a good faith immunity to

---

[4] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) not only did not decide whether private defendants can raise a good faith defense, but also "left open the question whether private defendants charged with 42 U.S.C. § 1983 liability for invoking state replevin, garnishment, and attachment statutes later declared unconstitutional are entitled to qualified immunity from suit." *Wyatt*, 504 U.S. at 159. *Wyatt* answered the question in the negative. *Id.* at 169.

5

Section 1983 liability but left open whether they could raise "an affirmative defense based on good faith and/or probable cause." *Id*. at 168–69.

This distinction is important. A "defense" and an "immunity" are different things: a defense rebuts the alleged deprivation of rights, while an immunity is an exemption from Section 1983 liability, even if there is a deprivation. *See Wyatt*, 504 U.S. at 166–67; *id*. at 172–73 (Kennedy, J., concurring). In other words, "a legal defense may well involve 'the essence of the wrong,' while an immunity frees one who enjoys it from a lawsuit whether or not he acted wrongly." *Richardson*, 521 U.S. at 403 (quoting *Wyatt*, 504 U.S. at 171–72 (Kennedy, J., concurring)).

Therefore, in this Circuit, no controlling precedent suggests that the Union is entitled to a good faith defense, and the court should decline to find one.

### 3. The good faith defense applied to defendants by other circuit courts is inapplicable here.

Some other circuits recognize a good faith defense in Section 1983 actions for private actors. Yet, even these decisions are distinguishable beacause the basis for the court's finding of such a defense was the required state of mind element of the alleged constitutional deprivation, as a review of the development of this case law makes clear.

Specifically, on remand from the Supreme Court, the Fifth Circuit in *Wyatt* held the defendants could raise a good faith defense because of the state of mind requirements of the due process claim, namely malice and lack of probable cause. 994 F.2d 113, 1119–21 (5th Cir. 1993). The Fifth Circuit recognized that the Supreme Court "focused its inquiry on the elements of these torts," and found "that plaintiffs *seeking to recover on these theories* were required to prove that defendants acted with malice *and* without probable cause." *Id*. at 1119 (first emphasis added).

Several circuit courts later followed the Fifth Circuit's lead and recognized that malice and lack of probable cause are elements of due process claims arising from a private party's ex parte seizure of property. *See Pinsky v. Duncan*, 79 F.3d 306, 312–13 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698–99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1276–77 (3d Cir. 1994); *see also Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008) (recognizing good faith defense in case concerning whether a seizure of property violated due process requirements).

The Second Circuit in *Pinsky*, for example, required proof of "malice" and "want of probable cause" because "malicious prosecution is the most closely analogous tort and look[ed] to it for the elements that must be established in order for [the plaintiff] to prevail on his § 1983 damages claim." 79 F.3d at 312–13. The Third Circuit in *Jordan* likewise required proof of "malice" for the same reason, recognizing that while "section 1983 does not include any *mens rea* requirement in its text, . . . the Supreme Court has plainly read into it a state of mind requirement specific to the particular federal right underlying a § 1983 claim." 20 F.3d at 1277.

Those cases, however, only recognized a "rule to govern damage claims for due process violations under § 1983 where the violation arises from a private party's invocation of a state's statutory remedy . . . ." *Pinksy*, 79 F.3d at 313. They did not recognize a blanket good faith defense to all constitutional and statutory claims brought under Section 1983. Indeed, the notion that *all* deprivations of constitutional and federal statutory rights actionable under Section 1983—including First Amendment violations—require proof of malice and lack of probable cause is wrong.[5]

---

[5] The only circuit court to address the good faith defense for a First Amendment claim did so in an unpublished, nonprecedicial opinion. *See Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016).

Additionally, the Sixth Circuit found that private parties can raise a "common law good faith defense to malicious prosecution and wrongful attachment cases" brought under Section 1983. *Duncan v. Peck*, 844 F.2d 1261, 1267 (6th Cir. 1988). Again, the court there did so because malice and lack of probable cause are elements of those types of due process claims. *Id*.

Unlike the defendants in the above cases, the Union's state of mind when it seized agency fees from non-consenting employees is immaterial to whether its seizures caused a "deprivation of . . . rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *see City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993) (holding animus unnecessary to show that regulation violated the First Amendment). No particular state of mind is needed to prove that the Union deprived Plaintiffs of their First Amendment rights by forcing them to subsidize its speech without their consent. *See Janus*, 138 S. Ct. at 2486. Thus, the good faith defense recognized by the circuit courts and mentioned as a possibility by the Supreme Court does not apply here to the Union's First Amendment violation.

### 4. The common law does not support a good faith defense.

The Supreme Court has inferred certain defenses to Section 1983 actions based on prior common law principles. *See Richardson v. McKnight*, 521 U.S. 399, 403 (1997); *Wyatt*, 504 U.S. at 164–65 (1992) (same). However, even if this Court sought to analogize Plaintiffs' First Amendment claim to a common law tort, it cannot find a good faith defense, and thus this claimed defense cannot be use to justify Defendants' motion to dismiss.

Plaintiffs' compelled speech and association claim has no common law analog. Section 1983 is not "simply a federalized amalgamation of pre-existing common-law claims," but "is broader in that it reaches constitutional and statutory violations that do not correspond to any previously known tort." *Rehberg v. Paulk*, 566 U.S. 356, 366 (2012). "Compelling a person to

8

subsidize the speech of other private speakers" infringes on his or her First Amendment rights because "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning" causes them to be "coerced into betraying their convictions" *Janus*, 138 S. Ct. at 2464 (italics omitted). Compelled speech also undermines "our democratic form of government." *Id.* Consistent with these principles, the Supreme Court held that deducting agency fees from nonmembers' wages without their consent "violates the First Amendment." *Id*. at 2486. Thus whether the Union acted in good faith or in bad faith when it took this action is irrelevant. Either way, the action deprived the employees of their First Amendment rights under *Janus* and damaged them accordingly.

Nevertheless, to the extent that the court could draw any common law analogy here, Plaintiffs' claim is distantly like the tort of conversion because the union wrongfully took their property. Good faith is not a defense to conversion—a strict liability tort. *See* Richard A. Epstein, *Torts*, § 1.12.1 at 32 (1999); *see also Morissette v. United States*, 342 U.S. 246, 253-54 (1952) ("In the civil tort [of conversion], except for recovery of exemplary damages, the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant. If one takes property which turns out to belong to another, his innocent intent will not shield him from making restitution or indemnity . . .") (footnote omitted).

In *Danielson v. AFSCME, Council 28*, a district court claimed that the most analogous common law tort for the unconstitutional taking of agency fees is not conversion, but "[a] dignitary tort, such a defamation, or tortious interference with a contract or business expectancy." *Danielson v. AFSCME, Council 28*, No. 3:18-cv-05206-RJB, at *5 (W.D. Wash. Nov. 28, 2018). But defamation at common law was a strict liability tort and thus would provide no good faith defense. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 346 (1974) (noting "the common-law rule of strict

liability for libel and slander" and "the common law of strict liability for defamatory error"). And forced payments to a union are not analogous to a contractual or business tort.

### 5. The policy justifications for qualified immunity do not support a good faith defense for the Union for its First Amendment violations.

The Union recognizes, as it must, that it has no right to qualified immunity. Doc. 13-1 at 6. The principal basis for qualified immunity—"to give public officials the peace of mind to exercise discretion in decision making," *Sherman v. Four County Counseling Center*, 987 F.2d 397, 405 (7th Cir. 1993)—has no application to the Union or any other private actor. *See Richardson*, 521 U.S. at 403 (holding private party did not have qualified immunity); *Wyatt*, 504 U.S. at 164–65 (same).

Courts do not "make [their] own judgment[s] about the need for immunity." *Rehberg*, 566 U.S. at 363. The "immunity doctrine is rooted in historical analogy, based on the existence of common law rules in 1871, rather than in freewheeling policy choices." *Wyatt*, 504 U.S. at 170 (Kennedy J., concurring) (quotations and alterations omitted). Courts only "accord[] immunity where a 'tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine'" when it enacted Section 1983. *Richardson*, 521 U.S. at 403 (quoting *Wyatt*, 504 U.S. at 164). Given that courts "do not have a license to create immunities based ` on [their] view[s] of sound policy," *Rehberg*, 566 U.S. at 363, it follows that courts also do not have license to create equivalent defenses for private parties to Section 1983 liability based on policy reasons.

The historical justifications for qualified immunity—the need to ensure that the threat of personal liability does not dissuade individuals from acting as public servants—apply to some defendants but not to others. Municipalities and most private defendants, for example, do not enjoy immunity. *See, e.g.*, *Wyatt*, 504 U.S. at 168 (holding private defendant lacked qualified

immunity); *Owen*, 445 U.S. at 651–56 (holding municipalities lack qualified immunity).

This is especially true for private parties such as the Union, where the analogous government body *lacks* qualified immunity. A large entity like the Union is nothing like an individual public servant whom qualified immunity shields from personal liability—the basis for an individual's qualified immunity does not apply. Rather, the Union's most analogous government counterpart is an organization, such as a municipality. "It hardly seems unjust to require a municipal defendant which has violated a citizen's constitutional rights to compensate him for the injury suffered thereby. Indeed, Congress enacted § 1983 precisely to provide a remedy for such abuses of official power." *Owen*, 445 U.S. at 654. So too here. It is not unjust to require the Union to compensate Plaintiffs for the fees it wrongfully seized from them against their will. "Elemental notions of fairness dictate that one who causes a loss should bear the loss." *Id*.

The Supreme Court in *Owen* held municipalities have no right to qualified immunity partially for this reason—i.e., because "many victims of municipal malfeasance would be left remediless if the city were also allowed to assert a good-faith defense." *Id.* at 651. "Unless countervailing considerations counsel otherwise, the injustice of such a result should not be tolerated." *Id*. (footnote omitted). That injustice also should not be tolerated here—Plaintiffs should be made whole for their injuries.

**B. Adopting a Good Faith Defense for First Amendment Violations is Inconsistent with the Supreme Court's Retroactivity Jurisprudence.**

The Union asserts that its "good faith" defense is consistent with the Supreme Court's retroactivity jurisprudence. *See* Doc. 13-1 at 12-13. Specifically, the Union argues: "Rather, retroactivity is a question of 'whether the court should apply the old rule or the new one' and thus is 'a matter of choice of law.'" *Id.* at 12 (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 534-35 (1991) (plurality op.)). This statement, however, was a mere preamble to Justice

Souter's plurality opinion in *James B. Beam Distilling*. There, the Court explained the choices it had regarding retroactive application of law and then *held* "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." *James B. Beam Distilling*, 501 U.S. at 544; *see also Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993) (recognizing that a majority of Justices in *James B. Beam Distilling*, agreed on a specific approach to the retroactivity of its decisions, and applied the rule).

Thus, the Union's statement that the Court treats the retroactivity of an already promulgated decision in civil cases as a "choice of law" principle in anything besides the academic sense is baseless.

### C. The Union Cannot Be Granted a Good Faith Defense to Section 1983 Liability Under the Guise of a "Defense" Based on Equity and Fairness

The Union further argues that equity and fairness justify a good faith defense for private parties who have no right to qualified immunity. Doc. 13-1 at 6-7. This argument fails because (1) it defies Section 1983's statutory text; (2) it is inconsistent with *Wyatt*, 504 U.S. at 164–65; and (3) equity favors redressing the constitutional abuses of wrongdoers, not insulating them from liability.

First, as noted above, there is no way to carve a good faith element into Section 1983's unambiguous mandate that "every person" who deprives a citizen of constitutional rights "shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983. This is all the more true because Section 1983 "contains no independent state-of-mind requirement." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). There is therefore no basis in Section 1983's text for the good faith defense the Union seeks.

Second, the Supreme Court has held that "principles of equality and fairness . . . are not sufficiently similar to the traditional purposes of qualified immunity to justify such an expansion" of immunity to private parties. *Wyatt*, 504 U.S. at 168; *see Crawford-El v. Britton*, 523 U.S. 574, 590 n.13 (1998) (reiterating that "[f]airness alone is not . . . a sufficient reason for the immunity defense, and thus does not justify its extension to private parties."). The Union's basis for arguing for a good faith exemption to Section 1983 liability is foreclosed by *Wyatt*.

As noted above, the possibility of a good faith defense discussed in dicta by some justices in *Wyatt* was a defense to the due process deprivation alleged in that case, and not an effective immunity to Section 1983 available to all private defendants. As Justice Kennedy made clear, "it is something of a misnomer to describe the common law as creating a good-faith *defense*; we are in fact concerned with the essence of the wrong itself, with the essential elements of the tort." 504 U.S. at 172 (Kennedy, J., concurring). The appellate decisions that followed *Wyatt* found malice and lack of probable cause to be elements of those due process claims. *See supra* 6-7. Here, unlike in those cases, malice and lack of probable cause are not elements of the First Amendment deprivation Plaintiffs suffered.

Third, even if equity and fairness could justify disregarding Section 1983's mandate that defendants who deprive others of constitutional rights "shall be liable to the party injured in an action at law," 42 U.S.C. § 1983, the interests would not do so here. Any discussion of equity must consider the relative harm and the benefits the Union received from its unconstitutional activity. Here, the Union unlawfully collected and kept Plaintiffs' money in violation of the First Amendment. It not only violated Plaintiffs' rights, but it benefited, and continues to benefit from doing so. *See Janus*, 138 S. Ct. at 2486 (noting the "considerable windfall that unions have received under *Abood* for the past 41 years"); *id.* ("It is hard to estimate how many billions of dollars have

been taken from nonmembers and transferred to public-sector unions in violation of the First Amendment.").

The Union's First Amendment violations have resulted in its unjust enrichment. Equity cannot allow unions to retain moneys collected in violation of the First Amendment—when they are unjustly enriched at the expense of Plaintiffs' and other non-members' First Amendment rights. The principles of equity require that the Union return the fee payments it unlawfully seized, retained, and benefited from during the limitations period.

**D. Even if the Court Finds the Good Faith Defense Applicable, the Motion to Dismiss Cannot be Granted Based on the Good Faith Defense**

Even if a good faith immunity defense for the Union could be read into Section 1983, the Union would find no shelter under it. First, the Union's leadership knew, or certainly should have known, that its fee seizures were unconstitutional, but chose to keep seizing fees from employees anyway. As the Supreme Court in *Janus* recognized, "unions have been on notice for years regarding this Court's misgivings about [*Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977).]" *Id.* at 2484. Six years ago, the Court criticized *Abood* as a "First Amendment 'anomaly.'" *Id.* (quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 310-311 (2012)). Four years ago, the Court in *Harris v. Quinn*, 134 S. Ct. 2618 (2014), "cataloged *Abood*'s many weaknesses" and almost overruled it. *Id.* Three years ago, the Court granted certiorari in *Friedrichs v. CTA* on whether to overrule *Abood* and split 4-4 due to the death of Justice Scalia. *Id.* at 2485 (citing *Friedrichs*, 136 S. Ct. 1083 (2016)). And one year ago, the Court granted certiorari in *Janus* solely to consider whether to overrule *Abood* and hold agency fees unconstitutional. "During this period of time, any public-sector union seeking an agency-fee provision in a collective-bargaining agreement must have understood that the constitutionality of such a provision was uncertain." *Id.* at 2484.

The Union is nothing like the defendants in *Wyatt*, *Jordan*, *Pinsky*, or *Vector Research*, who innocently used replevin, garnishment, or attachment statutes that violated due process guarantees. It perpetuated a practice with full knowledge that it likely violated employees' First Amendment rights. The Union is not an innocent party. It was on notice before the limitations period here that its agency fee seizures likely violated employees' First Amendment rights, yet it persisted in taking employees' money to support its own expressive activities.

Second, even if the Court finds the Union can assert a good faith defense, the Court should deny the Union's Motion to Dismiss and permit Plaintiffs to conduct discovery into the Union's intent and state of mind to determine whether it acted in good faith. *See, e.g.*, *Stone v. Worcester Cty. Sheriff's Office*, No. 18-CV-10011-ADB, 2019 WL 1367768, at *5 (D. Mass. Mar. 26, 2019) (finding that "the applicability of a qualified immunity or 'good faith'` defense cannot be decided without discovery"); *Jordan*, 20 F.3d at 1277 (describing the good faith defense as depending on subjective intentions of the defendant and thus requiring a factual determination).

Moreover, while it is true the Supreme Court negated the common law requirement of subjective intent for qualified immunity in *Harlow*, it did so because "bare allegations of malice should not suffice to subject *government officials* either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (emphasis added). The Supreme Court thus held government officials performing discretionary functions are shielded from "liability for civil damages insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. This wholly objective standard, the Court found, would "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Id.*

In *Wyatt,* however, the Court specifically rejected this rationale for private defendants. Indeed, the Court specifically held that the considerations for doing away with the subjective prong of the qualified immunity analysis "are not transferable to private parties." 504 U.S. at 168; *see also id.* at 174 (Kennedy, J. concurring) (noting that good faith question "may be resolved on summary judgment if the plaintiff cannot come forward with facts from which bad faith can be inferred. But the question is a factual one, and a plaintiff may rely on circumstantial rather than direct evidence to make his case.").

Thus, even if this Court accepts the availability of a good faith defense, it should deny the Union's Motion to Dismiss in order to afford Plaintiffs the opportunity to conduct discovery on the issue of "good faith." The Court must therefore deny the Defendants' motion to dismiss.

## III. In the Alternative, this Court Should Award Plaintiffs Nominal Damages.

If the Union need not compensate Plaintiffs for depriving them of their First Amendment rights by the seizure of agency fees, the Union should be required to pay Plaintiffs nominal damages. Nominal damages are awarded to "recognize[] the importance to organized society that [constitutional] rights be scrupulously observed . . . ." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). Nominal damage awards are appropriate for deprivations of First Amendment rights. *See Draper v. Coombs,* 792 F.2d 915, 921 (9th Cir. 1986).

Additionally, when considering the equities, there is even less basis for recognizing a good faith defense to an award of nominal damages than there is for recognizing such a defense to compensatory damage awards. Even if equity somehow favored depriving victims of compensation for their injuries when a wrongdoer acts in good faith, equity would not favor denying the victim—or a whole class of victims if this case is certified as a class action—nominal

damages of $1 to symbolize that his constitutional rights were, in fact, violated. Plaintiffs thus should at least be awarded nominal damages.

## IV. Plaintiffs Are Entitled to Declaratory Relief

A defendant's "voluntary cessation" of unlawful conduct does not moot a claim for declaratory relief. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.").

And the Union must show that its decision to halt the collection of agency fees was not "voluntary." But the Union cannot make this showing because *Janus* imposes no legal obligations on non-parties, and the Union has no legal obligation to obey the Supreme Court's judgment in which it was not a party until this Court orders it to do so. Judicial opinions only bind only the named parties to a litigation. *See Martin v. Wilks*, 490 U.S. 755 (1989); *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).

Indeed, Supreme Court opinions do not create self-executing legal obligations unless a court enters a judgment that enforces the Supreme Court's interpretation of the Constitution. *See, e.g.*, Edward A. Hartnett, *A Matter of Judgment, Not A Matter of Opinion*, 74 N.Y.U. L. Rev. 123, 126–27 (1999) (footnote omitted) ("The operative legal act performed by a court is the entry of a judgment; an opinion is simply an explanation of reasons for that judgment."); Thomas W. Merrill, *Judicial Opinions as Binding Law and as Explanations for Judgments*, 15 Cardozo L. Rev. 43, 62 (1993) ("[J]udicial opinions are simply explanations for judgments—essays written by judges explaining why they rendered the judgment they did.").

The Union chose to conform to its conduct to *Janus* to avoid these post-*Janus* lawsuits, but no statute or judgment required them to do so. Plaintiffs are asking for that remedy here. Thus, Plaintiffs' requested declaratory judgment is not moot.

## CONCLUSION

For these reasons, the Union's Motion to Dismiss should be denied.

Respectfully submitted,

PATRICK DOUGHTY and
RANDY SEVERANCE,
As Individuals and Representatives
of the Requested Class,
By Their Attorneys,

Date:  April 15, 2019                      /s/ Bryan K. Gould
Bryan K. Gould, Esq. (NH Bar #8165)
gouldb@cwbpa.com
Cleveland, Waters and Bass, P.A.
Two Capital Plaza, P.O. Box 1137
Concord, NH 03302-1137
Telephone: (603) 224-7761
Facsimile:  (603) 224-6457

Milton L. Chappell, DCB #936153
mlc@nrtw.org
Alyssa K. Hazelwood, MDB (no bar number)
akh@nrtw.org
Frank D. Garrison, IN #34024-49
fdg@nrtw.org
c/o National Right to Work Legal
    Defense Foundation, Inc.
8001 Braddock Rd, Ste. 600
Springfield, VA 22160
Telephone: (703) 770-3329

Attorneys for Plaintiffs and the Requested Class

## CERTIFICATE OF SERVICE

I hereby certify that the within pleading is being served electronically upon counsel listed below through the court's ECF system.

Gary Snyder, Esq. of State Employees Association of NH, SEIU Local 1984
Ramya Ravindran, Esq. of Bredhoff & Kaiser, P.L.L.C.
Leon Dayan, Esq. of Bredhoff & Kaiser, P.L.L.C.
John S. Krupski, Esq. of Milner & Krupski, PLLC


Date: April 15, 2019            /s/ Bryan K. Gould
                                Bryan K. Gould