# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

PATRICK DOUGHTY and  
RANDY SEVERANCE,

        Plaintiffs,

v.

STATE EMPLOYEES' ASSOCIATION  
OF NEW HAMPSHIRE, SEIU LOCAL 1984,  
CTW, CLC,

        Defendant.

No. 1:19-cv-53-PB

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

**I.	Additional Newly Decided Authority Unanimously Supports Application of the Good-Faith Defense to Bar Plaintiffs' Claims for Repayment of Pre-*Janus* Fees**

In our opening brief, we noted that in recent months no fewer than five district courts had addressed the issue that is presented here – all of them applying the good-faith defense and rejecting the plaintiffs' claims for repayment of fair-share fees paid prior to the Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). *See* Mem. in Support of Mtn. to Dismiss, Dkt. #13-1 ("Def. Mem.") at 4-6. In the six weeks since that brief was filed, the number of cases addressing this issue has more than doubled to eleven – all of them reaching the same result. Like the decisions noted in our opening brief, these courts have held that plaintiffs' attempts to recover fair-share fees paid prior to *Janus* – at a time when state labor-relations statutes authorized such fees were still in force, and the Supreme Court's 1977 decision upholding fair-share requirements in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), was the law of the land – were barred by the good-faith defense under § 1983. *See Lee v. Ohio Educ. Ass'n*, No. 1:18CV1420, ---F. Supp. 3d----, 2019 WL 1323622 (N.D. Ohio Mar. 25, 2019); *Hough v. SEIU Local 521*, No. 18-cv-04902-VC, 2019 WL 1274528 (N.D. Cal. Mar. 20, 2019); *Mooney v. Illinois Educ. Ass'n*, No. 1:18-cv-1439, ---F. Supp. 3d----, 2019 WL 1575186 (C.D. Ill. Apr. 11, 2019); *Bermudez v. SEIU Local 521*, No. 18-cv-04312-VC, 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019); *Akers v. Maryland Educ. Ass'n*, No. RDB-18-1797, ---F. Supp. 3d----, 2019 WL 1745980 (D. Md. Apr. 18, 2019); *Wholean v. CSEA SEIU Local 2001*, No. 3:18-cv-01008-WWE, 2019 WL 1873021 (D. Conn. Apr. 26, 2019).

As is apparent from this "ever-growing number of courts," *Lee*, 2019 WL 1323622, at *1, that have addressed and unanimously decided the issue, the good-faith defense shields unions against claims resulting from their having followed and applied the law as it existed at the time

of their actions.[1] Plaintiffs cite no authority to the contrary – because none exists – and they make no attempt to address the holdings of these cases, all but two of which were decided before Plaintiffs filed their Objection. Instead, Plaintiffs principally advance two contentions, both of which fail on their own terms and in any event have been roundly rejected by the courts cited above: (1) that the good-faith defense has no applicability to First Amendment claims; and (2) that Defendant cannot invoke the good-faith defense without an inquiry into what it subjectively understood about the likelihood that *Abood* would be overruled.

**II.     The Good-Faith Defense Is Fully Applicable to Plaintiffs' First Amendment Claim**

Disregarding all of the recent decisions in which courts addressing exactly the issue presented here have applied the good-faith defense to plaintiffs' First Amendment claims, Plaintiffs contend principally that the good-faith defense is available only for constitutional claims containing a scienter requirement, attempting to distinguish the First Amendment claim at issue here from the Due Process claims at issue in *Wyatt v. Cole*, 504 U.S. 158 (1992), and some of the decisions that followed it. *See* Plaintiffs' Objection, Dkt. #15 ("Pl. Obj.") at 6-10. This argument has been unanimously rejected by the post-*Janus* cases,[2] and for good reason: it ignores entirely the rationale on which the good-faith defense is based.

It is no accident that the good-faith defense was initially recognized in decisions holding that private parties – although subject to suit under Section 1983 – were not entitled to the

---

[1] Plaintiffs' brief clarifies that they do not contend that Defendant SEA-NH collected any fair-share fees after the *Janus* decision. Plaintiffs' Objection, Dkt. #15, at 2 n.3. That being the case, footnote 1 of Defendant's Memorandum and the declaration to which it refers can be disregarded and Defendant's motion decided entirely under Rule 12(b).

[2] *See Danielson v. AFSCME Council 28*, 340 F. Supp. 3d 1083, 1085-86 (W.D. Wash. 2018); *Cook v. Brown*, 2019 WL 982384 at *5-6 (D. Or. Feb. 28, 2019); *Carey v. Inslee*, ---F. Supp. 3d----, 2019 WL 1115259 at *6-7 (W.D. Wash. Mar. 11, 2019); *Crockett v. NEA-Alaska*, ---F. Supp. 3d----, 2019 WL 1212082 at *4-5 (D. Alaska Mar. 14, 2019); *Janus v. AFSCME Council 31*, 2019 WL 1239780 at *2-3 (N.D. Ill. Mar. 18, 2019); *Mooney*, 2019 WL 1575186 at *6-7.

2

qualified immunity that public officials, sued alongside them, could invoke. As the court explained in *Crockett* in refusing to construe the good-faith defense in the "limited manner" that Plaintiff suggests here:

> [T]he impetus for such a defense is rooted in concerns about the unfairness that would result from holding private parties retrospectively liable under § 1983 for following the law. When the Supreme Court held that private parties using a process established by state statute can be considered state actors for purposes of § 1983, it recognized that private individuals could unfairly be held liable if the state law is later held to be unconstitutional and suggested that the "problem should be dealt with … by establishing an affirmative defense."

*Crockett*, 2019 WL 1212082, at *4 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n.23 (1982)); *see also Winner v. Rauner*, 2016 WL 7374258, at *5-6 (N.D. Ill. Dec. 20, 2016) ("limiting principles of scienter or motive are not consistent with the Supreme Court's approach because they would still leave private parties exposed to a damages verdict for relying on seemingly valid state laws that were later held to be unconstitutional"). Plaintiffs cite no case – and there is none, from among the dozens involving the good-faith defense – that has ever held the good-faith defense inapplicable on the basis Plaintiffs propose here.

While it is correct that the *Wyatt* Court looked to the common law, it did so to answer the categorical question of whether an immunity should be recognized for nongovernmental defendants, as it had been for government officials. And while the Court answered that question in the negative, it then added that "principles of equality and fairness" might require the recognition of a good-faith defense. 504 U.S. at 168-69. The Court nowhere suggested that application of that defense would require a case-by-case inquiry into the nature of the § 1983 claim or the most closely analogous common-law tort, any more than the application of qualified immunity required such an inquiry. Indeed, several years later the Court suggested (albeit again in dicta) the availability of a good-faith defense in an Eighth Amendment case not readily

3

analogous to any common-law tort containing a scienter requirement. *Richardson v. McKnight*, 521 U.S. 399, 413-14 (1997).

In *Wyatt*, as in many of the lower-court cases that followed it, it happened that the state laws upon which the defendants relied were "state replevin, garnishment, and attachment statutes later declared unconstitutional." 504 U.S. at 159. But "the relevant question for a good-faith defense is not the nature of the particular statute on which the defendant relied, but whether that reliance was in good faith." *Janus v. AFSCME Council 31*, 2019 WL 1239780 at *2 (N.D. Ill. Mar. 18, 2019). Thus, the courts of appeals applying the good-faith defense have looked to whether the defendants "failed to act in good faith in invoking the unconstitutional state procedures, that is, if they either knew or should have known *that the statute upon which they relied* was unconstitutional." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993) (emphasis added); *Pinsky v. Duncan*, 79 F.3d 306, 311 (2d Cir. 1996) (same). The question whether SEA-NH can be held liable in damages for relying on a then-valid New Hampshire statute – the statute authorizing fair-share fees – thus presents exactly the same question as whether the defendant in *Wyatt* could be held liable for relying on the Mississippi replevin statute.

Assuming *arguendo* that it is necessary or helpful to identify a common-law analogy to the constitutional tort, in both cases the apt analogy, as discussed in *Wyatt*, is the tort of abuse of process, which at common law provided a "cause[] of action against private defendants for unjustified harm arising out of the misuse of governmental processes." 504 U.S. at 164. Here, Plaintiffs' complaint is that the State deducted fair-share fees from their paychecks and sent those fees to the Union under the provisions of state law and the collective bargaining agreement between the State and the Union. Without this use of governmental processes, there could have been no exaction of fair-share fees and no issue of § 1983 liability. It is precisely through this

alleged misuse of governmental processes that Plaintiffs claim they were deprived of their constitutional rights. Their claim thus is fully analogous to the claims based on the use of state replevin statutes in *Wyatt* and similar cases. Indeed, a private party sued under § 1983 *necessarily* is being sued for (mis-)use of governmental processes, for without the use of some governmental process there could be no § 1983 liability for the private defendant. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). The relevant question for application of the good-faith defense is whether the alleged misuse of governmental processes was undertaken in reliance on a presumptively valid statute – regardless of the nature of the particular statute relied upon.[3]

Related arguments advanced by Plaintiffs can be addressed summarily. Plaintiffs' reliance on the absence, from the statutory language of § 1983, of any reference to a state-of-mind requirement, Pl. Obj. at 4, is a red herring, as the Second Circuit has explained, "because, unlike standard defenses, affirmative defenses need not relate to or rebut the specific elements of an underlying claim." *Jarvis v. Cuomo*, 660 F. App'x 72, 75 (2d Cir. 2016).

More generally, the attack on "equity and fairness" as the reason for making a good-faith defense available to nongovernmental § 1983 defendants, Pl. Obj. at 12-14, fails precisely

---

[3] The flaw in Plaintiffs' reasoning is further illustrated by their attempt to distinguish cases like *Wyatt* and *Pinsky* from this one. While in those cases the defendant's state of mind would have been relevant to a common-law claim of abuse of process or malicious prosecution, it was not at all relevant to the *constitutional* claim that the plaintiff's property had been seized in replevin without due process of law and seeking, under § 1983, to hold the defendant "liable for damages for the deprivation of Wyatt's due process rights." 504 U.S. at 162. In *Wyatt*, just as in this case, the defendant's state of mind was irrelevant to the question of whether the plaintiff's constitutional right was violated. Thus, while "malice and lack of probable cause are not elements of the First Amendment deprivation Plaintiffs suffered," Pl. Obj. at 13, they were not "elements of the [Due Process] deprivation Plaintiffs suffered" in *Wyatt* and *Pinsky* either. If it were the case, as Plaintiffs argue, that "the basis for the court's finding of such a [good-faith] defense was the required state of mind element of the alleged constitutional deprivation," *id.* at 6, the outcomes in *Wyatt*, *Pinsky*, and similar Due Process cases involving attachment, garnishment, or replevin statutes would have been different.

5

because "this sentiment is the source of the doctrine – and was a limiting principle invoked by the Court when extending § 1983 liability to private parties." *Winner*, 2016 WL 7374258 at *6 (citing *Lugar*, 457 U.S. at 942 n.23). And Plaintiff's reference to the Supreme Court's refusal to accept "equality and fairness" as a basis for extending the doctrine of *qualified immunity* to private defendants, Pl. Obj. at 13 (quoting *Wyatt*, 504 U.S. at 168), simply fails to recognize that qualified immunity is not the issue here. The Court found such considerations insufficient to support the extension of qualified immunity to nongovernmental actors because that doctrine rested on "the special policy concerns involved in suing government officials." 504 U.S. at 167. But in the same breath the Court made clear that such "principles of equality and fairness" might well suggest that nongovernmental defendants "could be entitled to an affirmative defense based on good faith …." *Id.* at 168-69.[4]

Finally, Plaintiffs assert in passing that, because qualified immunity is not available for municipalities, the good-faith defense should not be available to organizational defendants such as unions. Pl. Obj. at 10-11. This argument was analyzed at some length and rejected by the *Mooney* court, which explained that the policy concerns that made qualified immunity improper for municipal corporations "do not inhere in private institutional defendants," so that "the reasons against extending qualified immunity to municipal corporations and counties are inapposite" to the availability of the good-faith defense to nongovernmental entities sued under § 1983. *Mooney*, 2019 WL 1575186 at *8-9. Unsurprisingly, therefore, multiple cases –

---

[4] The assertion that SEA-NH has been unjustly enriched, Pl. Obj. at 13-14, is also far from the mark, as the court pointed out in *Mooney*: "[U]nions were not unjustly enriched by the payment of fair-share fees because, as the name implies, the fees covered the costs of union representation for non-union members." 2019 WL 1575186 at *5; *see also id.* at *6 (quoting *Gilpin v. AFSCME*, 875 F.2d 1310, 1316 (7th Cir. 1989), for the proposition that it is the union that would have a claim for restitution if it were forced to pay back nonmembers' fair-share fees).

including cases outside the union context presented here – apply the good-faith defense to the benefit of defendant corporations, business associations, or other non-individual entities. *See, e.g.*, *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994) (law firm); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692 (6th Cir. 1996) (law firm); *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008) (towing company).

### III. Defendant's Good Faith Is Measured by its Reliance on Existing Law, Not its Prediction of Future Developments

Plaintiffs' second principal argument is that prior to the *Janus* decision SEA-NH was not entitled to rely on existing law and Supreme Court precedent approving it because, in a line of cases beginning with *Knox v. SEIU*, 567 U.S. 298 (2012), the Court had "criticized *Abood*" and "almost overruled it." Pl. Obj. at 14.

This contention squarely frames the issue: Are citizens entitled to rely on the law as it exists at the time of their actions – as the lower courts are indeed *required* to do, *see* Def. Mem. at 11 – or must they order their affairs according to their speculation, based on reading the tea leaves and counting the votes, of what the Supreme Court is likely to say next? We explained in our opening brief why the latter rule would be detrimental not only to private citizens but to the rule of law itself, *id.* at 11-12, and in *Danielson* Judge Bryan made the same point, in rejecting the plaintiffs' contention that they should be allowed to take discovery on the union's subjective expectations about whether *Abood* was likely to survive:

> Although the overruling of *Abood* had been considered by the Supreme Court, *see Harris*, 134 S. Ct. at 2632-34 and *Knox*, 567 U.S. at 298, the Union Defendant should not be expected to have known that *Abood* was unconstitutional, because the Supreme Court had not yet so decided. Inviting discovery on the subjective anticipation of an unpredictable shift in the law undermines the importance of observing existing precedent and ignores the possibility that prevailing jurisprudential winds may shift. This is not a practical, sustainable or desirable model. The good faith defense should apply here as a matter of law. The Union Defendant cogently summarizes the reason: "agency fees *were* constitutional at

7

> the time … [and] no amount of discovery could show that [the union] knew or should have known something that was not true."

*Danielson*, 340 F. Supp. 3d at 1086-87 (emphasis and brackets in original).

Similarly, the *Mooney* court explained that the plaintiff had no right to insist on discovery into the union defendants' state of mind, regardless of whether the proper test was an objective or subjective one, because "Defendants' reliance on *Abood* was not only objectively reasonable but shows subjective good faith as a matter of law." 2019 WL 1575186 at *10. That was because "individuals are entitled to rely upon binding United States Supreme Court precedent," *id.* (quoting *Lee*, 2019 WL 1323622 at *2), and "[t]hus, where there is a valid state statute constitutional under then-current Supreme Court precedent, subjective good faith may be presumed." *Id.*; *see also Carey*, 2019 WL 1115259 at *7 ("good faith may be decided as a matter of law when the defendant relied upon a valid statute").[5]

That prior to *Janus* the *Abood* precedent was "almost overruled," as Plaintiffs put it, Pl. Obj. at 14, of course means that it was *not*, in fact, overruled, and that it therefore remained the law of the land at all times relevant to the issue presented here. That is more than a sufficient basis, as a matter of law, for SEA-NH to invoke the good-faith defense. Any rule to the contrary, requiring citizens to order their affairs not in reliance on existing law, but instead on the basis of nonbinding dicta that "almost" but did not overrule existing precedent, would be not simply unfair to private citizens, but pernicious for the rule of law in a democratic society.

---

[5] In a different context, of course, the need for discovery might well be evaluated differently. Plaintiffs cite *Stone v. Worcester Cty. Sheriff's Office*, No. 18-cv-10011-ADB, 2019 WL 1367768 at *5 (D. Mass. Mar. 26, 2019), in support of their contention that they should be allowed discovery. But, unlike the instant case, the basis for the assertion of a good-faith defense in *Stone* was not reliance on a presumptively valid statute, but rather the defendant doctor's understanding about an incarcerated patient's legal rights. Under those circumstances the court found the defendant's subjective understanding relevant and discovery warranted.

**IV.    Plaintiffs Are Not Entitled to the Additional Remedies They Seek**

Plaintiffs' claims for declaratory relief and nominal damages, *see* Pl. Obj. at 16-18, must also be rejected. As to the first, Plaintiffs filed their lawsuit over six months after the Supreme Court had held fair-share requirements unconstitutional and deductions of fair-share fees from their wages had ceased, as Plaintiffs acknowledge. *Id.* at 2 n.3. When they sued, in January 2019, they were not subject to or imminently threatened with any injury to their First Amendment rights. That being so, they had no standing to seek any form of prospective relief. A plaintiff's standing "must [be] demonstrate[d] … separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000), and the fact that a plaintiff may have standing to seek damages for a previously suffered injury is not enough to establish Article III jurisdiction over a claim for prospective relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Rather, the "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original). Plaintiffs do not allege – nor could they – that at any time since June 2018 they have been required to pay fair-share fees or that any such requirement has been "certainly impending." Accordingly, they have no standing to seek declaratory relief (or any other form of prospective relief).[6] And, to the extent they might be seeking a declaration with respect to the constitutionality of fair-share fees

---

[6] Multiple courts have, since the *Janus* decision, held that plaintiffs lacked standing to seek prospective relief or that such claims were moot, where fair-share collections had been promptly terminated following *Janus*. In particular, to the extent the issue was one of mootness rather than standing, the courts have rejected the "voluntary cessation" argument Plaintiffs proffer here. *See Danielson v. Inslee*, No. 3:18-cv-05206-RJB, 2018 WL 3917937 at *2-3 (W.D. Wash. Aug. 16, 2018); *Yohn v. California Teachers Ass'n*, No. 8:17-cv-00202-JLS-DFM, 2018 WL 5264076 at *3-4 (C.D. Cal. Sept. 28, 2018); *Lamberty v. Conn. St. Police Union*, No. 3:15-cv-00378-VAB, 2018 WL 5115559 at *8-9 (D. Conn. Oct. 19, 2018); *Cook*, 2019 WL 982384 at *3-5; *Carey*, 2019 WL 1115259 at *2-4; *Crockett*, 2019 WL 1212082 at *3; *Lee*, 2019 WL 1323622 at *1-2; *Berman v. N.Y. State Pub. Emp. Fed'n*, No. 16-cv-204(DLI)(RLM), 2019 WL 1472582 at *3 (D. Conn. Mar. 31, 2019); *Akers*, 2019 WL 1745980 at *4-5; *Wholean*, 2019 WL 18773021, at *4-6.

prior to June 2018, "issuance of a declaratory judgment deeming past conduct illegal is … not permissible as it would be merely advisory." *ACLU of Mass. v. United States Conf. of Catholic Bishops*, 705 F.3d 44, 53 (1st Cir. 2013); *see also* Def. Mem. at 13-14 (citing additional cases).

Neither do Plaintiffs have any valid claim for nominal damages. We are aware of no case, and Plaintiffs cite none, in which a court has applied the good-faith defense to preclude damages under § 1983, while nonetheless awarding nominal damages. And that is for good reason. As Justice Kennedy pointed out in his concurring opinion in *Wyatt*, one reason for distinguishing the good-faith defense from an "immunity" is that, "[b]y casting the rule as an immunity, we imply the underlying conduct was unlawful, a most debatable proposition in a case where a private citizen may have acted in good-faith reliance upon a statute." 504 U.S. at 173. Thus, it is simply not the case that – as Plaintiffs would have it – "the Union unlawfully collected and kept Plaintiffs' money in violation of the First Amendment." Pl. Obj. at 13. To the contrary, the Union collected fair-share fees prior to June 2018 in full accordance with existing law and controlling Supreme Court precedent. As Judge McDade recently put it in *Mooney*: "To suggest Defendants' conduct was 'unlawful' or even wrong while it was in accordance with state law and Supreme Court precedent would undermine basic principles of equity and fairness. The good-faith defense prevents that injustice here." 2019 WL 1575186 at *10.

## CONCLUSION

For the reasons stated above and in our opening brief, the Complaint should be dismissed.

Dated: April 29, 2019

Respectfully submitted,

/s/ Ramya Ravindran

Gary Snyder (NH Bar No. 265339)
General Counsel
State Employees Association of New
Hampshire, SEIU Local 1984
207 North Main Street
Concord, NH 03301

Leon Dayan*
Ramya Ravindran*
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street N.W., Suite 1000
Washington, DC 20005
(202) 842-2600

10

(603) 271-3411  
gsnyder@seiu1984.org

ldayan@bredhoff.com  
rravindran@bredhoff.com

John S. Krupski (NH Bar No. 11309)  
MILNER & KRUPSKI, PLLC  
109 North State Street, Suite 9  
Concord, NH 03301  
(603) 410-6011  
jake@milnerkrupski.com

*Counsel for Defendant*

\* Admitted *pro hac vice*

# CERTIFICATE OF SERVICE

I, Ramya Ravindran, an attorney, hereby certify that on April 29, 2019, I caused the foregoing **Reply Memorandum in Support of Defendant's Motion to Dismiss** to be filed electronically with the Court. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

                                                          /s/ Ramya Ravindran
                                                          Ramya Ravindran