UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * *
PATRICK DOUGHTY and              *
RANDY SEVERANCE,                 *
                                 *
          Plaintiffs,            *
                                 *   1:19-cv-53-PB
            v.                   *   May 30, 2019
                                 *   2:01 p.m.
STATE EMPLOYEES' ASSOCIATION     *
OF NEW HAMPSHIRE, SEIU LOCAL     *
1984, CTW, CLC,                  *
                                 *
          Defendants.            *
* * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:


For the Plaintiff:     Frank D. Garrison, Esq.
                       Milton L. Chappell, Esq.
                       National Right to Work Legal
                       Defense Foundation

                       Cooley Ann Arroyo, Esq.
                       Cleveland, Waters & Bass, PA


For the Defendant:     Ramya Ravindran, Esq.
                       Leon Dayan, Esq.
                       Bredhoff & Kaiser PLLC

                       John S. Krupski, Esq.
                       Milner & Krupski, PLLC


Court Reporter:        Liza W. Dubois, RMR, CRR
                       Official Court Reporter
                       U.S. District Court
                       55 Pleasant Street
                       Concord, New Hampshire 03301
                       (603) 225-1442

                    P R O C E E D I N G S

          THE CLERK:  This Court is in session and has

for consideration motion hearing in civil matter

19-cv-53-PB, Patrick Doughty, et al., vs. State

Employees' Association.

          THE COURT:  Does anybody want to draw any

cases to my attention -- my attention that have been

decided since the last supplemental authority that I've

been provided with?

          No?  Okay.  All right.

          So I'd like the plaintiffs to explain to me

why I shouldn't grant the motion to dismiss from the

bench for the reasons set forth in the court's opinion

in *Babb* and the unanimous reasoning expressed in all of

the other district court cases that have addressed the

question.

          MR. GARRISON:  Thank you, your Honor.

          I would submit that those cases, they don't

take into consideration the proper analysis that the

supreme court has put forth to find new defenses and

immunities under 1983.  Those cases basically state that

you have to look to the common law.

          THE COURT:  So let me -- let me be clear.

          Your argument is not that this case is in any

way distinguishable; your case is based on the premise

1  that these opinions are all wrongly decided.

2         MR. GARRISON:  They -- yes, your Honor.

3         THE COURT:  Okay.

4         MR. GARRISON:  So the supreme court has always

5  said that Section 1983, if they find immunities or

6  defenses, you have to look to common law.  And if you

7  can find something, usually through an analogous tort or

8  there's a defense at common law, then you can adopt

9  that.  Otherwise, you are acting outside of basically

10  what Congress intended and any -- anything else is just

11  pure policymaking.  And --

12         THE COURT:  You mean like the government

13  contractor defense Justice Scalia created in the

14  helicopter case?

15         MR. GARRISON:  I'm not sure about that case,

16  your Honor.  I apologize.

17         THE COURT:  You don't know about that case?

18         MR. GARRISON:  No.

19         THE COURT:  That's a supreme court case where

20  Justice Scalia, the great critic of judicial activism,

21  created an affirmative defense essentially out of whole

22  cloth and called it federal common law government

23  contracting defense.

24         MR. GARRISON:  Yeah.  I submit that this Court

25  shouldn't do that.  Basically, you know, if they're

1    going to -- if a defense is going to be found, it should

2    be found through common law.

3           Like I said, Congress is --

4           THE COURT:  Can we step back for a second and

5    just tell me how in any version of the world would it be

6    right to require these defendants to pay damages for

7    acting consistent with the requirements of state law and

8    the -- and supreme court precedent?

9           MR. GARRISON:  Because if you look at cases

10   like *Owen*, the supreme court has said the point of 1983

11   is to make people whole for violations of constitutional

12   law.

13          THE COURT:  But without regard to fault?

14          MR. GARRISON:  That's what Congress enacted,

15   and there is no immunity or defense in Section 1983.

16          THE COURT:  No, you're missing the point.  I

17   mean, I'm asking you a broader theoretical question.  Of

18   course I'll ultimately decide the question in accordance

19   with what the requirements of law are, but how could you

20   possibly construct an argument that it's right and just

21   to make defendants pay damages for acting in a way that

22   the state law and the supreme court told them to act?

23          MR. GARRISON:  Well, I think the supreme court

24   had foreshadowed that what they were doing was likely

25   unconstitutional.

1    THE COURT:  So the -- the -- the defendants

2 should have disregarded state law, refused to follow

3 state law?

4    MR. GARRISON:  It -- Section 1983 is a

5 deterrent statute.  If they had any qualms about what --

6    THE COURT:  So really what you're saying,

7 though, is they should have defied state law.  They

8 should have said the Constitution -- even though the

9 supreme court has said this behavior is constitutional,

10 we are -- will refuse to comply with state law because

11 we think the supreme court in the future will change its

12 mind.

13    MR. GARRISON:  I think that's true.  If you

14 look at the supreme court's retroactivity jurisprudence,

15 in *Harper* they said that we can apply law retroactively.

16 The unions must have known that.  And there's a chance

17 you're violating somebody's First Amendment rights.

18 That's the whole point of Section 1983 --

19    THE COURT:  Is it --

20    MR. GARRISON:  -- is to vindicate people.

21    THE COURT:  Is it true that at the time these

22 defendants were engaging in the conduct that you are

23 challenging that state law authorized the collection of

24 the fees?

25    MR. GARRISON:  Yes.

1          THE COURT:  Okay.  So you want them to defy

2     state law.

3          MR. GARRISON:  State law only authorizes these

4     contracts.  They don't have to put those in their

5     contracts.  These are negotiations between the state and

6     the union.  They could have, out of abundance of caution

7     for respecting people's First Amendment rights, not

8     included that in their contract.

9          THE COURT:  I have a lot of trouble seeing it.

10         So -- all right.  So let's go back to your

11    legal argument.  Your legal argument is that a good

12    faith defense can only be recognized where you can

13    identify an analog in state law, a state tort

14    affirmative defense of good faith.

15         MR. GARRISON:  I believe that's so, your

16    Honor, because what the supreme court has said is --

17         THE COURT:  Well, didn't the court in

18    *Babb* -- and following reasoning that other courts have

19    looked at -- said the injury that you're suing for is a

20    constitutional injury and the analog to conversion that

21    you're trying to draw just isn't is an appropriate one.

22         And so you're suggesting that there shouldn't

23    be any good faith defense for engaging in conduct that

24    you in good faith believe is constitutional.  You don't

25    dispute that these defendants in good faith, looking at

```
 1   supreme court precedent at the time they were acting,
 2   that they acted in good faith in believing that the --
 3   their actions were constitutional, right?
 4            MR. GARRISON:  I would dispute that, your
 5   Honor.  I --
 6            THE COURT:  Really?  What is the basis in your
 7   complaint or in any facts you want to draw to my
 8   attention to suggest that these defendants did not act
 9   in good faith?
10            MR. GARRISON:  Well, we think, your Honor,
11   that when *Harris* and *Knox* were decided, they were told
12   that *Abood* was on shaky ground.  And so if you can -- I
13   mean, this is a 12(b)(6) motion, so --
14            THE COURT:  Yeah, I'm just saying tell me what
15   you've pleaded that would support a conclusion that --
16            MR. GARRISON:  I don't --
17            THE COURT:  -- a plausible claim that these
18   defendants have acted in bad faith.
19            MR. GARRISON:  Well, I don't think we have to,
20   your Honor.  This --
21            THE COURT:  Because you don't think there's
22   a -- so I'm just saying -- yeah, I -- what I'm asking
23   you is essentially to say, Judge, we agree that if
24   there's a good faith defense, we lose, because we are
25   not going to try to prove that these defendants acted in
```

1  bad faith; our claim depends entirely upon our view that

2  the law does not authorize a good faith defense in this

3  circumstance.

4         I think that's what you're saying.  If you'll

5  say it, we can move on.

6         MR. GARRISON:  No, no.  I -- I would not say

7  that, your Honor, because if you look at cases like

8  *Wyatt*, if the Court finds the common law analog closer

9  to abuse of process, which we don't think it can because

10  that tort just doesn't fit, then we have to be able to

11  prove subjective bad faith.  And that's something we can

12  do through discovery in --

13         THE COURT:  How?

14         MR. GARRISON:  -- in summary judgment.

15         We can look at correspondence the union had,

16  what their internal thoughts were when it came to --

17         THE COURT:  But the law was the law.  Their

18  behavior was entirely constitutional at the time they

19  engaged in it.

20         MR. GARRISON:  And that would -- well, that's

21  questionable, your Honor.

22         THE COURT:  Why is it questionable?  The

23  supreme court precedent had said that their behavior is

24  constitutional.

25         MR. GARRISON:  The supreme court had said

1    that, but the law --

2    THE COURT:  But you're -- you are -- you want

3    to take the law back to pre-*Erie against Tompkins*.

4    You -- your theory of the Constitution is that

5    the Constitution and all law is a brooding omnipresence

6    that is -- in which it is found by the court.  It

7    predates humanity.  It predates the existence of human

8    beings.  There is a constitutional law that does not

9    require any human action and the court just finds it

10   somewhere.

11   Is that what you're saying?

12   MR. GARRISON:  That -- since the Constitution

13   was ratified, the supreme court -- they find law.  They

14   do not make law.  The -- the violations in this case

15   have always been --

16   THE COURT:  You've read *Erie against Tompkins*,

17   right?

18   MR. GARRISON:  I -- in law school, your Honor.

19   THE COURT:  Okay.  Well, go back to it.  Do

20   you know the phrase "brooding omnipresence"?  That --

21   that was a view of the law that has been rejected by the

22   supreme court for over a hundred years.

23   So I just don't -- I -- I personally don't

24   understand that kind of conception.  You're saying that

25   even though the supreme court at the time had declared

1   the actions to be constitutional, their actions were, in

2   fact, unconstitutional and they're just waiting for the

3   supreme court to correctly declare the law.

4           MR. GARRISON:  I -- I think that's right, your

5   Honor.  And the supreme court in *Harris* and *Knox*

6   foreshadowed that, which would reduce any reliance

7   interest anybody had.

8           Plus, cases -- the -- cases like *Harper* say

9   that the law applies retroactively.  If -- if that

10  wasn't the case, then if the supreme court just made

11  law, then there would be no retroactivity.

12          THE COURT:  Okay.  So do you want to finish

13  your argument about why a good faith defense requires

14  reference to a common law analog?  Is there more you

15  want to say on that?

16          MR. GARRISON:  Right.  So Congress in 1871

17  provided no immunities or defenses.  The supreme court

18  has said that if there was -- that basically Congress

19  wouldn't have intended to do away with all of the

20  previous immunities and defenses.

21          So --

22          THE COURT:  Well, 1983 doesn't provide for

23  qualified immunity.

24          MR. GARRISON:  No, it doesn't, and the court

25  has -- but the court has found exceptions of where

1    there --

2            THE COURT:  Right.

3            MR. GARRISON:  -- where those were present at

4    common law.

5            THE COURT:  And courts like *Babb* say that you

6    don't look to a common law analog; you look to the same

7    kind of reasoning that led the court to recognize

8    qualified immunity.

9            And you just think that's wrong, right?

10           MR. GARRISON:  Yeah.  I think the supreme

11   court has said that.  They have basically -- if you look

12   at Justice King's concurrence in *Wyatt*, he said, we look

13   to the common law because we can't just -- it's just not

14   freewheeling policymaking when we find these things.

15   And if there's a -- if there's no defense in common law,

16   then courts are just making it up; they're just saying,

17   we think --

18           THE COURT:  You think they just make up the

19   qualified immunity for 1983 claims against government

20   officials?  They just made it up; is that it?

21           MR. GARRISON:  No, I don't think so, your

22   Honor.

23           THE COURT:  Where'd it come from?

24           MR. GARRISON:  They look to common law.  In

25   fact, for absolute immunity, they found these things

1  were always there in common law, so they were going to

2  apply them.  They said Congress couldn't have intended

3  to get rid of these.

4          But if they're not there at common law, then

5  it's just making up -- Congress -- it just wasn't there.

6  You can't just defy Congress and say that we're just

7  going to create these things without congressional

8  intent.

9          THE COURT:  I'm not a fan of defying Congress.

10         MR. GARRISON:  No, I wasn't saying --

11         THE COURT:  That's not what I do.

12         MR. GARRISON:  -- you.  Sorry.

13         But it's statutory construction, right?

14  Congress is the one that makes the law.  They make the

15  defenses and immunities.

16         THE COURT:  Yeah.  They didn't make immunity.

17  Immunity was created by the court.

18         MR. GARRISON:  And the court said that the

19  only reason that we're going to do that is because that

20  common law -- Congress would not have abrogated these

21  immunities.  That's the whole basis for the immunities

22  and defenses.

23         THE COURT:  You think that the majority of the

24  supreme court, applying their approach to statutory

25  construction today, would say the same thing?

```
1                MR. GARRISON:  Absolutely not, your Honor.

2                THE COURT:  Yeah.

3                MR. GARRISON:  I think they are looking at

4      precedent.  But it -- the -- I mean, the rationale still

5      holds, though, that without Congress providing these

6      things, then it's just common law judging.

7                THE COURT:  Okay.  So your view is it's most

8      analogous to conversion.  Conversion didn't have a good

9      faith defense; it's not analogous to other torts that do

10     have a good faith defense; you can't find good faith

11     defense unless you can find a state court analog;

12     because you can't, there isn't one; because there isn't

13     one, the plaintiffs' claim -- the defendant's motion to

14     dismiss should necessarily be denied.

15               MR. GARRISON:  Exactly, your Honor.

16               THE COURT:  All right.  Is there anything more

17     you want to add on that subject?

18               MR. GARRISON:  No.

19               THE COURT:  All right.  Thank you.

20               I'll hear your response.

21               MS. RAVINDRAN:  I'll be brief, your Honor.

22               So I think your Honor has already drilled down

23     to what the dispositive fact in this case is, which is

24     as the plaintiffs acknowledged in their brief, their

25     claim is directed solely at fees that were collected
```

1  prior to the *Janus* decision.  It is indisputably the
2  case that those fees were collected -- were authorized
3  by New Hampshire law and were upheld as constitutional
4  by the then-controlling law.
5          THE COURT:  If you accept the plaintiffs'
6  premise that it would be improper as a matter of
7  statutory construction to recognize an affirmative good
8  faith defense unless you can find an analog in state
9  common law, if you accept that premise -- and I know you
10  don't, but if you accept that premise as a starting
11  point, what would you say is the most analogous tort in
12  which a common law defense has been recognized?
13          MS. RAVINDRAN:  Right.  So the -- the analog
14  that I would use is abuse of process and it's for this
15  reason.
16          So the reason that we are here on this Section
17  1983 claim with -- as with the private party, as my
18  client is, goes back to *Lugar*.  It's the reason
19  that -- that the conduct here falls under the -- you
20  know, arguably falls under the rubric of under color of
21  state law is that the defendant, acting with
22  participation of state officials, had invoked a state
23  process by which fees were deducted by the state, by the
24  plaintiffs' employer, and then remitted to the union.
25  So and it's that use of the state process is the reason

1    that we are even here for a Section 1983 --

2          THE COURT:  Explain that to me in a little

3    more detail.

4          MS. RAVINDRAN:  Yes.  So the way fair share

5    fees, the fees that are at issue here, are collected

6    under the state procedure that's set up here in

7    New Hampshire is under the New Hampshire Public Employee

8    Labor Relations Act, unions are authorized to negotiate

9    and to collect a bargaining agreement, a fair share fee

10   requirement.  And the collective bargaining agreement

11   that is at issue here and the time period that's

12   relevant here authorized the deduction -- required the

13   payment of fair share fees by employees like the

14   plaintiffs who are in the bargaining unit that is

15   represented by the union, but who declined to become

16   members of the union.

17         THE COURT:  Right.  So it is that process that

18   you say authorizes the fees and to the extent there was

19   a wrong, it was a misuse of that process.  Since the

20   most analogous tort in your view would then be abuse of

21   process and a good faith defense was available to an

22   abuse of process tort, it should be -- also be

23   recognized here.

24         MS. RAVINDRAN:  Correct --

25         THE COURT:  Okay.

          MS. RAVINDRAN:  -- that would be our position

under that analysis.

          THE COURT:  All right.  Now, what do you say

to his -- I assume you take the same position as the

court did in *Babb* that it is not necessary to find a

state law analog to the good faith defense that you're

asking us to -- asking the Court to recognize here.

          What do you say to the defendant's argument

that any defense to a 1983 claim can only be

recognized -- and he says including qualified and

absolute immunity are all derivative of state common law

claims and, therefore, to the extent that the court in

*Babb* or you contend that there isn't a need for state

law analog, it's inconsistent with supreme court

precedent?  What do you say to that?

          MS. RAVINDRAN:  Well, what I would say is that

if we -- and we can go back to Justice Kennedy's

concurrence in *Wyatt*, as plaintiffs have cited, where --

which is where the roots of the good faith defense first

started.  And what Justice Kennedy says in that

concurrence is that there was support in the common law

for the proposition that it is reasonable as a matter of

law for a private citizen to rely on a state statute

prior to any judicial determination of

unconstitutionality.

1          So that -- that is already embedded in the

2    common law and that is the rationale that -- in the five

3    circuit courts that have had occasion to address the

4    good faith defense, who adopted that rationale of

5    that --

6          THE COURT:  This goes way beyond that.  This

7    is a case where they -- the defendant had not just state

8    law that authorized the specific action they engaged in,

9    but supreme court precedent --

10          MS. RAVINDRAN:  Correct.

11          THE COURT:  -- recognized that their actions

12    were entirely consistent with the Constitution.

13          MS. RAVINDRAN:  That's correct, your Honor.

14          So applying the good faith defense into the

15    circumstances of this case is actually a small subset of

16    the -- of what the other circuit courts who have had

17    reason to address the issue of the good faith defense

18    have recognized.  Because in those five circuit courts,

19    there was no on-point supreme court decision that had

20    evaluated the exact same conduct that was at issue in

21    the Section 1983 claim.

22          There was a state -- a state law that

23    authorized the conduct and under those circumstances,

24    those courts did recognize a good faith defense that

25    would be applicable in that situation.

1           Our case is much stronger, in my view, because

2    there is -- if you take the language in the Fifth

3    Circuit in *Wyatt*, which was the first circuit court to

4    recognize the good faith defense, the standard they use

5    is whether they knew -- whether the defendant knew or

6    should have known that the statute they're relying on is

7    constitutional.

8           At the time period in which the fees were

9    collected, there's no question that the statute on which

10   the union was relying on was constitutional because

11   *Abood* had -- was the controlling law of the land at that

12   time and it had addressed the exact same conduct that is

13   at issue here.

14          THE COURT:  Yeah, I -- as I said, stepping

15   away from the pure technical legal analysis, it is

16   incomprehensible to me the idea that under the unique

17   circumstances of this case, which is something that will

18   occur very rarely during the life of the country --

19          MS. RAVINDRAN:  Right.

20          THE COURT:  -- in which the supreme court

21   decides to flatly overturn its prior precedent -- we

22   want people to rely on our decisions.  One of the

23   reasons that judges express their views in written

24   opinions is so that people can rely on it.  And then to

25   suggest that when judges flip 180 degrees on the law

that people who we want to rely on our decisions are
then subjected to suits for damages because we changed
our mind seems arrogant in the extreme.

It -- it's incomprehensible to me that courts
would allow for damage actions to be maintained under
those unique circumstances.  I just -- I can't even
begin to understand the idea that any court could
award -- allow an action to proceed in a case like this.
I -- I mean, it's just incomprehensible.

We want -- we issue decisions and we want
people to follow them.  We don't want people -- to tell
people, look, follow us, but if we decide to change
our mind later, you're going to have to pay damages.
That -- that's crazy.

MS. RAVINDRAN:  I agree with every word of
that, your Honor.

THE COURT:  All right.  So, in any event, what
else would you like to say?

MS. RAVINDRAN:  Unless the Court has
questions --

THE COURT:  No, I want to hear a response to
anything that's been said by the defendant's counsel.

MR. GARRISON:  Your Honor, I would just like
to respond to a couple points.

So the first one being about people not being

1   liable for damages.  Our clients had their

2   constitutional right violated; their First Amendment

3   rights --

4        THE COURT:  No, I doubt -- I don't even

5   understand that.  I thought their constitutional rights

6   were actually -- were not violated at all because the

7   supreme court at the time the actions occurred said that

8   their conduct was constitutional.

9        MR. GARRISON:  So basically in saying that --

10        THE COURT:  The supreme court changed the law.

11   You have -- you -- you have this idea that the law was

12   always there and it was always unconstitutional, but it

13   was just hidden because the supreme court was screwed up

14   when they said something.  And I just have a different

15   conception of the way the law works.

16        MR. GARRISON:  I understand, your Honor, but

17   as the supreme court said, the retroactivity

18   jurisprudence says these cases are retroactive to every

19   case that's open.

20        So our clients' First Amendment rights were

21   violated.  They had their money taken, spent on

22   idealogical things that they did not want.  They

23   objected the whole time.

24        If there's a -- if this is purely equities and

25   not a statutory interpretation case, then those equities

need to be balanced.  I don't think there's any opinion
that has ruled on this case that has looked to our
clients' or other people's First Amendment rights when
balancing the equities.  As the supreme court said in
*Owen*, 1983, the history and purpose of it was to give
people damages for --

THE COURT:  The State Employees' Association
is an association of current and former employees, is
that -- state employees?  Is that what the -- the State
Employees' Association is?

MR. GARRISON:  Yes.

THE COURT:  Yeah.

MR. GARRISON:  Yes.

THE COURT:  And so what you're saying now is
people who are -- who are paying fees to support the
State Employees' Association today should be required to
have their money diverted to pay employees for things
that happened in the past.  So we should take money from
them and give it to these employees whose -- whose
conduct --- who were injured, in your view, in the past.
So it's basically taking money from someone who's done
nothing wrong, through their association, and giving it
to your clients because they were wronged.

MR. GARRISON:  If you look at the supreme
court's jurisprudence in *Owen*, that's pretty much

```
 1   exactly what they were doing.  It was a municipality.
 2   This is a private association corporation.  And if we're
 3   going to decide who the equities go for, then it should
 4   be the people that got their First Amendment rights
 5   violated.  Most of --
 6              THE COURT:  Yeah, I don't agree with that.
 7   It's not -- I don't think it matters one way or the
 8   other to the analysis of the questions raised by your
 9   complaint.
10              MR. GARRISON:  Well, the -- what I'm saying is
11   if -- if we're just going off pure equities, not looking
12   at common law statutory construction, we'd just ask the
13   Court to balance the equities.  That's what they're
14   asking for.  They're asking for basically an affirmative
15   defense based in policy.
16              THE COURT:  Okay.  Why -- why is not abuse of
17   process the better analog than conversion?
18              MR. GARRISON:  Because abuse of process is an
19   historical tort, is using the court system to basically
20   try and get people's property through unconstitutional
21   means.
22              THE COURT:  All right.  Aren't they using
23   process authorized by state law?
24              MR. GARRISON:  Your Honor, if you define
25   process at that level of generality, then everything is
```

 1   an abuse of process tort.  We just don't believe that --
 2   they're trying to shoehorn that in here and it just
 3   doesn't fit.  The most analogous tort is conversion.
 4   They took people's property against their will and spent
 5   it on stuff that they did not want, on idealogical
 6   activities that they did not want.  Their First
 7   Amendment rights were violated and -- by taking their
 8   money and spending it.
 9            THE COURT:  Okay.  What else would you like to
10   say?
11            MR. GARRISON:  I would just like to say that
12   the Ninth Circuit cases, *Babb* included, are all
13   following *Clement*, which did not do a common law
14   analysis.  It just assumed that there was a good faith
15   defense, applied it to the facts of the case.  So the
16   Ninth Circuit cases, *Babb* included, are basically just
17   ruling on these free from any common law basis.  I mean,
18   some in passing have said, you know, this is more likely
19   the abuse of process, but haven't given it really any
20   analysis.  We just ask the Court --
21            THE COURT:  Well, *Babb* -- *Babb* does that
22   analysis.
23            MR. GARRISON:  Well, it -- not in any -- I
24   don't think it does it in any proper -- it doesn't give
25   it the proper, I don't know, analysis that it deserves.

```
 1              THE COURT:  All right.  Hang on a minute.
 2              MR. GARRISON:  It does give an analysis.  I
 3   apologize, your Honor.
 4              THE COURT:  I thought it did.  I just -- I --
 5   I just wanted to look through.
 6              And when I read it earlier, I understood it to
 7   present that analysis.  But you can disagree with it.
 8   I --
 9              MR. GARRISON:  Yeah, I do disagree with it.
10   And it's just -- we think it's a little -- you know,
11   it's in one paragraph.
12              THE COURT:  Yeah.
13              MR. GARRISON:  So ...
14              THE COURT:  That's fine.  I understand that.
15              Anything else that you'd like to say?
16              MR. GARRISON:  No, your Honor.
17              THE COURT:  Okay.
18              MR. GARRISON:  I just would like to close
19   with, you know, if we're going to be balancing equities,
20   we would like the Court to take into consideration that
21   our clients had their First Amendment rights violated
22   and we don't think that any of the previous cases have
23   done that.
24              THE COURT:  All right.  And I -- and, believe
25   me, I think it's very important for courts to pay
```

careful attention to First Amendment considerations.  I

don't think you'll find a judge who has a more

aggressive enforcement of First Amendment rights than

me.  The only two times I have found state statutes to

be unconstitutional are claims -- cases in which those

state statutes have been applied to violate the First

Amendment rights of the plaintiffs.  One was a pharmacy

information law that violated the rights of the

plaintiffs in that case.  I invalidated the law on First

Amendment grounds.  I was reversed by the First Circuit.

My position was ultimately endorsed by the supreme court

and my view prevailed.

A couple years -- a few years ago, I

invalidated a law that banned what are called ballot

selfies on First Amendment grounds.  My view on that

point was upheld by the First Circuit Court of Appeals.

I fully endorse vigorous enforcement of

people's First Amendment rights.  In my view, this issue

has nothing to do with that.  It -- the underlying claim

is a First Amendment claim, but the -- the fundamental

problem here is that this is a case that requires a good

faith defense, in my view.  It's a case in which without

regard to a state law analog, a good faith defense must

be available to protect defendants under these kinds of

circumstances and it can -- its existence can be

inferred from supreme court precedent recognizing the

qualified immunity doctrine in a related context.

          To the extent that a state law analog is

required, I agree with the plaintiffs in this case

that abuse of process is a much stronger analog than

conversion.  A good faith defense has traditionally been

recognized for abuse of process torts and it's

appropriate to analogize to that.

          I don't believe conversion is the appropriate

analogy here.  The injury to your clients, as the court

points out in *Babb*, is an -- a First Amendment injury.

It's an injury to their dignity and autonomy in being

forced to support speech that they don't agree with.

That tort is not really a conversion tort and I think

the abuse of process tort is a better analog.  To the

extent that a future court should decide that there must

be a state law analog, I agree with the court in *Babb*

that abuse of process provides the better analog.

          I find the reasoning of the court in *Babb* to

be very carefully expressed.  I don't find there to be

any facts in this case as pleaded in the complaint that

distinguish the -- your clients' claims from the claims

that were at issue in *Babb*.  I recognize that *Babb* was

decided in the Ninth Circuit and is subject to Ninth

Circuit precedent.  It doesn't restrict me here.

1          But I find the reasoning that underlies that

2     precedent to be entirely persuasive.  I endorse it.  I

3     don't find any basis on which to distinguish your case

4     from the cases in which courts around the country have

5     unanimously agreed that your cause of action is subject

6     to a good faith defense.  I do not see any -- any

7     unusual circumstances in this case which would prevent

8     me from recognizing the existence of a good faith

9     defense and determining that it's appropriate to

10    consider it here on a Rule 12(b)(6) motion.

11          Of course, in ruling on a 12(b)(6) motion,

12    I -- I am required to follow the standard adopted by the

13    supreme court in *Iqbal* and *Twombly*.  I'm required to

14    examine the complaint, strike out any allegations in the

15    complaint that are conclusory, look at what remains and

16    ask whether it states a plausible claim for relief.

17          First Circuit precedent does allow me to grant

18    a motion to dismiss in certain circumstances based on

19    the availability of an affirmative defense.  As I've

20    explained, I believe for the reasons set forth by the

21    court in *Babb* and the other courts that have reached a

22    similar conclusion that a good faith defense is

23    available to the plaintiffs here and I agree -- I agree

24    with those courts that it is appropriate to recognize

25    that defense and apply it here in response to the

1  complaint that you have brought.

2          Doing that, and using the 12(b)(6) standard, I

3  have concluded that even construing the allegations in

4  the complaint in the light most favorable to you that

5  you have not stated a plausible claim for relief in

6  light of the affirmative defense that I find is

7  available to the plaintiff.

8          Accordingly, I grant the motion to dismiss.

9  And I don't see any reason to allow you leave to amend

10  because there doesn't appear to be any -- to be any

11  unusual circumstances that would require an amendment or

12  that an amendment could cure the defects that I've

13  identified in the complaint.

14          I think you'd be better off, frankly, just

15  devoting your resources to an appeal.  So you should try

16  to get the First Circuit to reach a different conclusion

17  from me, which I respect that it's always possible that

18  it could do.  And that's where you really need to be

19  expending your time and your energy.

20          I don't think I have anything to add to the

21  analysis that the other district courts that have taken

22  it on have addressed, but if you think there's more that

23  I need to do, questions that you think I need to respond

24  to, tell me now and I'm happy to provide further

25  analysis to support my conclusion.  But I think I've

made clear to you how I think about the case and as I
said, I -- I think you should go ahead and appeal and
see what the First Circuit says.

But do you want -- is there more you need me
to do by way of analysis so that the case can be ready
for appellate review by the First Circuit?

MR. GARRISON:  I don't think so, your Honor.

THE COURT:  All right.

Is there anything more that the plaintiff
wants me to do?

MS. RAVINDRAN:  No.

THE COURT:  I really don't see any point in
writing -- not because I think your argument is legally
frivolous.  I want to be clear about that.  First
Amendment issues are important.  People like you should
be able to come to the courts and express novel ideas
about how your clients should be entitled to relief.  I
respect that and I'm not saying your claims are
frivolous.

I'm saying I just can't conceive of how they
could ever be allowable under the law as I understand it
to be.  And to the extent you wish to break new ground,
the fact that all the other courts are ruling against
you shouldn't deny you an opportunity to seek review
from an appellate court that's very experienced at

1   addressing First Amendment claims and issues of this

2   sort.

3            And so I -- I'm not, in ruling from the bench,

4   intending to suggest that your claim is frivolous.  I'm

5   merely suggesting that I don't see how it can possibly

6   proceed.  And to the extent I would allow it to proceed,

7   I would need guidance from the First Circuit explaining

8   to me why the claim is potentially viable.  And that's

9   all I'm trying to say here today.  Okay?

10           All right.  Is there anything else we need to

11   do today?

12           All right.  The defendant's motion to dismiss

13   is granted.

14           Thank you.

15           MR. GARRISON:  Thank you.

16           (Proceedings concluded at 2:35 p.m.)

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


       I, Liza W. Dubois, do hereby certify that
the foregoing transcript is a true and accurate
transcription of the within proceedings, to the best of
my knowledge, skill, ability and belief.


Submitted: 6/6/19

Liza Dubois, RMR, CRR
Licensed Court Reporter No. 104
State of New Hampshire